UNITED STATES of America,
Plaintiff-Appellant,

v.

Doyle Ray HENDERSON, Henry Salisbury, Louise Salisbury and Jonnie B. Couch, Defendants-Appellees.

No. 74–3925.

United States Court of Appeals,
Fifth Circuit.

Dec. 24, 1975.

Robert W. Rust, U. S. Atty., Donald F. Ferguson, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellant.

Michael T. Mallon, West Palm Beach, Fla. (Court-Appointed), for D. Henderson.

Jack V. Eskenazi, Federal Public Defender, Miami, Fla. (Court-Appointed not under Act), for H. Salisbury.

T. J. Sakowitz, Miami, Fla., Robert P. Foley, Philip G. Butler, Jr., West Palm Beach, Fla., for J. Couch, and L. Salisbury.

Before BROWN, Chief Judge, GEWIN and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

The Government appeals the dismissal of an indictment against four defendants for violations of the Controlled Substances Act, 21 U.S.C.A. § 801 et seq. The District Court dismissed the indictment because of the Government's refusal to provide the defendants with a transcript of a state court trial in which

three of the defendants were acquitted on similar charges. We affirm.

Henry Salisbury, Doyle R. Henderson, Louise Salisbury, and Jonnie B. Couch were indicted on April 15, 1974, by a federal grand jury at West Palm Beach, Florida. The indictment, which was in three counts but centered on one event, alleged that all four defendants conspired to import marijuana, 21 U.S.C.A. § 846,[1] Henry Salisbury and Doyle R.

Henderson imported 1300 pounds of marijuana, 21 U.S.C.A. § 952, and all defendants possessed with intent to distribute 1300 pounds of marijuana, 21 U.S.C.A. § 841. All defendants entered pleas of not guilty.

Henry Salisbury, Louise Salisbury, and Jonnie Couch previously had been tried and acquitted[2] in the Florida state court on similar charges concerning the same event.[3] Doyle R. Henderson was named

---

1. The indictment also states a violation of 21 U.S.C.A. § 953. This is apparently erroneous and the government may have intended to indict under § 963.

2. The jury was unable to reach a verdict on one count against Henry Salisbury. The defendants were acquitted on all other charges.

3. The Florida state information included 7 counts, two of which are particularly relevant here. Count One, against all four defendants, was for possession of more than 5 grams of marijuana, contrary to Florida Statute 893.13(1)(e):

(e) It is unlawful for any person to be in actual or constructive possession of a controlled substance unless such controlled substance was lawfully obtained from a practitioner or pursuant to a valid prescription or order of a practitioner while acting in the course of his professional practice or [to be in actual or constructive possession of a controlled substance] except as otherwise authorized by this chapter. Any person who violates this provision is guilty of a felony of the third degree, punishable as provided in § 775.082, § 775.083, or § 775.084.

Count Six, also against all four defendants, was for unlawfully bringing into the state of Florida more than 5 grams of marijuana in violation of Florida Statute 893.13(1)(d):

(d) It is unlawful for any person to bring into this state any controlled substance unless the possession of such controlled substance is authorized by this chapter or unless said person is licensed to do so by the appropriate federal agency.

The federal indictment contained 3 counts. Count II, against Henry Salisbury and Doyle Henderson, corresponds to Count Six of the state information:

COUNT II

That on or about September 9, 1973, at Palm Beach County in the Southern District of Florida,

HENRY SALISBURY and
DOYLE R. HENDERSON,

and others did knowingly and wilfully import into the United States from a place out-

side thereof approximately 1,300 pounds of marihuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Section 952.

21 U.S.C.A. § 952 states in part:

(a) It shall be unlawful to import into the customs territory of the United States from any place outside thereof (but within the United States), or to import into the United States from any place outside thereof, any controlled substance in schedule I or II of subchapter I of this chapter, or any narcotic drug in schedule III, IV, or V of subchapter I of this chapter, except that—

Count III corresponds to Count One of the state information and charges:

COUNT III

That on or about September 9, 1973, at Palm Beach County in the Southern District of Florida,

HENRY SALISBURY,
DOYLE R. HENDERSON,
LOUISE SALISBURY, and
JONNIE B. COUCH,

and others, did knowingly and wilfully possess with intent to distribute approximately 1,300 pounds of marihuana, a Schedule I controlled substance; in violation of Title 21, United States Code, Section 841.

21 U.S.C.A. § 841 states in part:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or

(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

Count I of the federal indictment charged all defendants with conspiracy to import marijuana in violation of 21 U.S.C.A. § 846 and had no counterpart in the state information.

COUNT I

From on or before January 1973 and continuing until September 1973, at Palm Beach County in the Southern District of Florida, and other places,

as a defendant in the state case but was not present for trial. He later entered a plea of nolo contendere to the state charges.

The federal case was set for trial July 23, 1974.[4] On July 11, Doyle Henderson filed a motion for the transcript of the state trial and of testimony at the state hearing on the motion to suppress evidence.[5] Henderson, who had already had counsel supplied to him under the Criminal Justice Act (CJA), 18 U.S.C.A. § 3006A, claimed that absence of the transcripts would "unduly and illegally prejudice the proper defense of his case."[6] Since he was unable financially to procure the transcript, he requested an order authorizing the services of transcribing the state records pursuant to subsection (e)(1) of the CJA.[7] The District Judge postponed trial and on August 6, 1974, entered an order requiring that the Government provide and pay for one copy of the state trial transcript.[8]

On August 20, the local United States Attorney informed the District Judge that the Department of Justice would not authorize payment for the transcript and that the Assistant United States Attorney was of the "opinion that I can prosecute this matter without the aid of any such transcript."[9] The Court on August 23, 1974 informed counsel that

> HENRY SALISBURY,
> DOYLE R. HENDERSON,
> LOUISE SALISBURY, and
> JONNIE B. COUCH,
>
> and others presently to the Grand Jury unknown, did knowingly and intentionally combine, conspire, confederate and agree to import large quantities of marihuana, a Schedule I controlled substance, into the country from a place outside thereof, and also to possess with intent to distribute large quantities of marihuana; and in furtherance of the conspiracy the defendants did agree to conceal the existence of the conspiracy, and in additional furtherance of the conspiracy did commit the following overt acts:
>
> OVERT ACTS
>
> 1. That in August of 1973 Henry Salisbury was in Jamaica, British West Indies.
>
> 2. On September 9, 1973, Henry Salisbury entered Boynton Inlet on the *Pathfinder IV.*
>
> 3. On September 9, 1973, Henry Salisbury, Louise Salisbury, Jonnie B. Couch and Doyle R. Henderson were at 2530 Au Soleil Avenue, Gulfstream, Florida.

> (1) *Upon request.*—Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services.
>
> (2) *Without prior request.*—Counsel appointed under this section may obtain, subject to later review, investigative, expert, or other services without prior authorization if necessary for an adequate defense. The total cost of services obtained without prior authorization may not exceed $150 and expenses reasonably incurred.
>
> (3) *Maximum amounts.*—Compensation to be paid to a person for services rendered by him to a person under this subsection, or to be paid to an organization for services rendered by an employee thereof, shall not exceed $300, exclusive of reimbursement for expenses reasonably incurred, unless payment in excess of that limit is certified by the court, or by the United States magistrate if the services were rendered in connection with a case disposed of entirely before him, as necessary to provide fair compensation for services of an unusual character or duration, and the amount of the excess payment is approved by the chief judge of the circuit. 18 U.S.C.A. § 3006A(e).

4. Doyle Henderson was represented throughout the federal proceedings by appointed counsel under the Criminal Justice Act (CJA), 18 U.S.C.A. § 3006A. The other three defendants were originally represented by retained counsel. On June 28, following a motion to withdraw by retained counsel due to a possible conflict of interest, the Federal Public Defender was appointed to represent Henry Salisbury. 18 U.S.C.A. § 3006A(h)(2)(A). Private counsel continued as attorney for Couch and Louise Salisbury. R. 36, 82, 88; App. 5.

5. R. 93–94.

6. *Id.* at 94.

7. (e) *Services other than counsel.*—

Henderson's attorney pointed out in the motion that he had already expended, without prior authorization, $150.00 for investigative services pursuant to § 3006A(e)(2).

8. R. 106.

9. R. 117.

the transcript was needed by the defendants properly to prepare their defense and that dismissal was the only "assistance" the Judge could offer if the Government were unable or unwilling to provide the transcript.[10] Government counsel responded that the Department of Justice still refused to authorize payment and that it was the "position of the Department . . . that necessary funds for indigents fall within the purview of the Criminal Justice Act."[11]

The District Judge then ordered each defense counsel to state the "manner and extent of prejudice to his client" which would result if the transcript were not provided.[12] Judge Fulton held a hearing on November 4, 1974, at which time for specific reasons indicated he dismissed the indictment without prejudice.[13]

The Government appeals the dismissal of the indictment under 18 U.S.C.A. § 3731[14] and claims that the District Court abused its discretion in dismissing the indictment. The Government claims that the necessary funds for the transcript could be obtained by the defendants under the Criminal Justice Act. In fact, the Government states in its brief: "There is no question that all defendants would have been provided with the necessary funds to purchase the transcript."[15] We are unable to be so certain.

There is little doubt that § 3006A(e)(1) covers the expense of transcripts so long as there is sufficient showing of need and status under CJA. *United States v. Brown*, 1970, 143 U.S.App.D.C. 244, 443 F.2d 659, 660. The trial court, however, has discretion as to when a transcript must be provided. *Brown, supra*; *United States v. Banks*, M.D. Pa., 1974, 369 F.Supp. 951, 953. The cases in which a transcript has been sought under

---

10. *Id.* at 118.

11. *Id.* at 120.

12. *Id.* at 121. Doyle Henderson claimed need of the transcript because he was not present at the prior trial and for impeachment and for statements by officers in regard to his charge of illegal search and seizure.

   Henry Salisbury's counsel claimed need of the transcript for possible impeachment and because he had not been counsel at the state trial.

   Jonnie Couch and Louise Salisbury requested the transcript for use in impeachment and to refresh their memories. R. 112–28.

13. The District Judge stated:

   it would seem to me that you would immediately recognize the fact that a transcript would be necessary and at that time contact counsel for the defense, contact the Court, and not just sit back and take the position that you could prosecute these people without a transcript, and that is what you have proposed to do, unless they can finance it themselves or secure its financing through the Administrative Office on the basis of the Criminal Justice Act.

   You have responded to my letter and you have told me that the Department of Justice declined and refused to do it, but you have taken no lead in this case, such as it has been, with defense counsel and the Court—I was not aware of the State Court transcript until it was raised here by their Motion.

   . . . I have already suggested and I am not unaware that whether the Department of Justice or the Administrative Office, by virtue of the Criminal Justice Act, is required to provide the transcript in this case, is debatable, but in the circumstances of this case, most of which I believe has been brought to light in this hearing this morning, I feel that the United States Government has been remiss and I feel in this instance that the Department of Justice should have ordered and secured that transcript, or at least made arrangements for it early after this case was filed.

   I believe that basic fairness at this juncture demands a dismissal of these defendants and that is precisely what I am ordering.

   The indictment as to each defendant is hereby dismissed without prejudice to prosecute them so long as the Statute of Limitations has not run, and upon the payment and the provision of a transcript by the Department of Justice.

   \* \* \* \* \* \*

   R. 146–48.

14. An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

   From a decision or judgment setting aside, or dismissing any indictment or information, 18 U.S.C.A. § 3731.

15. Government's Brf. at 5.

§ 3006A(e)(1) have involved the transcript of a previous trial in the same court system.[16] *Brown, supra,* at 659 (first trial ended in mistrial); *Banks, supra,* at 952 (transcript of trial sought for use in motion for new trial). In addition, under § 3006A(e)(3) any expenditure over $300.00 must be approved by the Chief Judge of the Circuit.[17] The perimeters of the procedure have not yet been established by litigation. *See United States v. Talbott,* N.D. Ohio, 1973, 58 F.R.D. 212, 213.

■ The Government argues that "one adversary should not be called upon to aid in the duties of the other."[18] The Department of Justice has apparently forgotten the words of this Court in *Dugan Drug Stores, Inc. v. United States,* 5 Cir., 1964, 326 F.2d 835, "that in a criminal prosecution a United States attorney has a double burden—the obligation to conduct the government's case zealously and the obligation to try that case fairly and with due regard to the rights of the accused." *Id.* at 837. More than that, such a simplistic approach ignores the burden—including financial burdens—imposed on the prosecution not infrequently on a constitutional basis to assure a fair trial on the merits, *Brady v. Maryland,* 1963, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215, 218, and to ameliorate the disparities in the quality of defense between those who can and those who cannot afford the resource sought. *See Douglas v. California,* 1963, 372 U.S. 353, 355, 83 S.Ct. 814, 815, 9 L.Ed.2d 811, 813; *Griffin v. Illinois,* 1956, 351 U.S. 12, 17–18, 76 S.Ct. 585, 100 L.Ed.2d 891; *Dorrough v. Estelle,* 5 Cir., 1974, 497 F.2d 1007, 1010; *Byrd v. Smith,* 5 Cir., 1969, 407 F.2d 363, 365.

■ We do not imply that the Department of Justice must always supply a transcript for the indigent defendant. Indeed, this case presents a very narrow problem. It is not the question whether there is a need. No one challenges that. It is not a question of whether the Court can compel production.[19] Nor is it even a question of whether the Government has to pay for that which the trial court reasonably concludes is needed. That much is reflected in the substantive principles and in the strong policy of CJA to furnish counsel and services to those unable to procure them so as to place such criminal defendant in a nearly equal position with a defendant who can pay. *United States v. Tate,* 6 Cir., 1969, 419 F.2d 131, 132; *accord, United States v. Bass,* 9 Cir., 1973, 477 F.2d 723, 725; *United States v. Maret,* 8 Cir., 1970, 433 F.2d 1064, 1069, *cert. denied,* 1971, 402 U.S. 989, 91 S.Ct. 1678, 29 L.Ed.2d 155.

■ Rather the case presents the limited question of which appropriation—that of the Department of Justice or the Administrative Office—is to be the purse from which payment is to be made. Consequently the case is one that should never have reached this Court, at least not in its present form. This intramural struggle should not come before us until internal administrative efforts completely fail. *See Geisser v. United States,* 5 Cir., 1975, 513 F.2d 862, 869. In the meantime, the needs of the defendants could not wait. The District Court, considering the particular circumstances of this case, was entitled to invoke, as effective sanction, dismissal of the indictment. *See United States v. Jackson,* 7 Cir., 1975, 508 F.2d 1001, 1008.

Affirmed.

---

**16.** In response to informal inquiries of the Administrative Office for the United States Courts the indication is that the Administrative Office is of the view that CJA does not cover appropriation of funds for the transcript of proceedings in another court system.

**17.** See note 7, *supra.* The estimated cost of preparing the transcript is $3,000.00–$3,500.00.

**18.** Appts. Brf. at 9–10.

**19.** See our recent case *United States v. Baker,* 5 Cir., 1975, 523 F.2d 741 wherein we reversed the conviction when the trial court failed to order that the defendant be furnished a complete transcript of the first trial before the beginning of the second trial.