UNITED STATES of America, Appellee,

v.

Vincent ARTUSO, Appellant.

UNITED STATES of America,
Appellant,

v.

Bradford WEDRA, Appellee.

Nos. 780, 819, Dockets 79–1383, 79–1419.

United States Court of Appeals,
Second Circuit.

Argued Feb. 25, 1980.

Decided March 14, 1980.

Beatrice H. Salten-Smith, New York City (Dublirer, Haydon, Straci & Victor, Paul A. Victor, New York City, of counsel), for appellant Vincent Artuso.

David Seth Michaels, New York City, The Legal Aid Society, Federal Defender Services Unit, New York City, for appellee Bradford Wedra.

Lawrence H. Sharf, Sp. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Eastern District of New York, Thomas P. Puccio, Attorney-in-Charge, U. S. Dept. of Justice, Organized Crime Strike Force, Eastern District of New York, Brooklyn, N. Y., and Kenneth F. McCallion, Sp. Atty., New York City, of counsel), for appellee in No. 79–1383 and for appellant in No. 79–1419.

Before TIMBERS, MESKILL, Circuit Judges, and PALMIERI, District Judge.*

PALMIERI, District Judge:

Bradford Wedra [Wedra] and Vincent Artuso [Artuso] were found guilty on July 3, 1979, after a jury trial, of two counts of conspiracy to violate the federal narcotics laws and one substantive count of distributing cocaine. (21 U.S.C. §§ 841, 846). Prior to the imposition of sentence, each defendant moved pursuant to Fed.R.Crim.P. 29 to set aside the jury's verdict and for judgment of acquittal or, in the alternative, for a new trial because of claimed prejudicial errors in the conduct of the trial. Wedra also moved to dismiss the indictment under Fed.R.Crim.P. 12(b) on the ground that the Government's conduct in the case violated his right to due process of law. In Judge Neaher's memorandum of decision and order of October 15, 1979, the court concluded that Wedra was entitled to a judgment of acquittal and dismissal of the indictment against him, but that his co-defendant, Artuso, was not, and that the errors claimed would not warrant a new trial in his case.

We affirmed the judgment of the district court as to appellant Artuso by order entered February 26, 1980. We now reverse the district court's order as to appellee Wedra.

### BACKGROUND

Bradford Wedra's older brother, Kenneth Wedra [Kenneth], was a New York State prisoner serving a sentence of 25 years to life for murder. In return for promises of protection and assistance when he came be-

---

* Hon. Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

fore State parole authorities, Kenneth agreed to served as a registered confidential informant for the federal Drug Enforcement Administration, as did his wife, Marie. Kenneth began to provide information to DEA Agent Magno, who was conducting an undercover investigation of heavy narcotics trafficking in the Bronx, where the Wedras were long-time residents. Artuso was one of the targets of the investigation.

Magno covered his visits to Kenneth in prison by posing as Marie's cousin and met Wedra there by chance in early 1978. When it became apparent that Kenneth's utility was limited by the circumstances of his incarceration, Kenneth and Agent Magno agreed to use Wedra as an intermediary to introduce Magno to the targets of the investigation and to vouch for him. Wedra did not know that his brother was an informant and he was not so apprised because of Agent Magno's concern about his loyalties and because of Kenneth's doubts about his brother's intelligence in dealing with undercover work. Magno's alleged understanding of the arrangement was that Wedra would merely make introductions and, with no further involvement, would not be subject to prosecution. Kenneth's alleged understanding was that the Government had promised that nothing would happen to his brother.

Wedra's involvement began in early 1978 with the delivery of a sealed message to one of his brother's criminal associates in the Metropolitan Correctional Center in Manhattan. On May 18, 1978, Magno and Wedra met to arrange an introduction to Artuso. Magno alleged that at that time, he discovered that Wedra was already involved in narcotics, and so informed Kenneth, who said there was no cause for concern since Wedra would "turn" and cooperate with the Government. At trial, however, Kenneth testified that Magno did not tell him of Wedra's criminal involvement until August, shortly before the September arrests took place.

Magno and Wedra met again on May 22, 1978 and the conversation, which was recorded by Magno, included Wedra's statements that he had found a cocaine supplier, could move the cocaine himself if Magno did not have enough money, and needed money to get out of debt. There was also some discussion of guns for protection. On May 24, 1978, Wedra introduced Magno to Artuso and a heroin purchase was arranged.

In the months following, numerous meetings occurred during which Magno recorded discussions about planned cocaine and heroin purchases. Two ounces of cocaine from Artuso were delivered by Wedra to Marie Wedra for Magno on June 29, 1978, and the next day, Magno paid Artuso $4,000 for the drugs. A one-eighth kilogram package of cocaine from Artuso was delivered by Wedra to Magno for quality testing on July 6, 1978, for which payment was later made to Artuso.

In early September, Artuso demanded a sample of the heroin before the entire transaction could take place. The transaction fell through when Wedra told Artuso of Magno's plans to have Wedra bring the money to Feliciano, an undercover police officer, instead of to the agreed-upon neutral location. Arrests were effected on September 8, 1978.

## WEDRA

The basis of the district court's decision to set aside the jury's verdict was its conclusion that the Government failed to meet its burden of proving predisposition when Wedra raised the defense of entrapment. There was conflicting psychiatric testimony at trial as to Wedra's intelligence and ability to make independent judgments. The court credited the defense expert's testimony that Wedra was "functioning at a borderline retardation level of intelligence," found Wedra to be an "unwitting helper," and analogized the Magno-Wedra relationship to that of Edgar Bergen and Charlie McCarthy. The court characterized Wedra's motivation as a desire to assist Kenneth "in whatever manner possible out of loyalty and devotion bordering on the mindless."

The jury, rejecting the entrapment defense, found otherwise, as they were plainly entitled to do. The Government's psychiatric expert testified that Wedra's behavior was inconsistent in that he seemed somewhat mentally or intellectually retarded, but also gave extremely sophisticated answers and was "alert." He found Wedra to be "quite manipulative" and noted that he would be able "to get himself out of a difficult situation which would not be expected by [sic] a person who is supposed to have a limited mental capacity." The expert suggested that Wedra might be trying to exaggerate his symptoms and stated that "[h]e certainly knows what he is doing and . . . he is for himself and . . . he is quite smart."

▮ The standard to be applied by a trial court confronted with a motion for a judgment of acquittal was set forth in *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir. 1972), quoting *Curley v. United States*, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232 (D.C.Cir.), *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. (footnotes omitted)

Furthermore, "[i]t is axiomatic on motion for acquittal that all reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense." *United States v. Skinner*, 138 U.S.App.D.C. 121, 123, 425 F.2d 552, 554 (D.C.Cir.1970).

In concluding that no rational juror could have found that Wedra was predisposed to commit the acts for which he was charged, the trial court substituted its own determination of the credibility of witnesses, the weight of the evidence, and the reasonable inferences for that of the jury. The jury, as factfinder, was entitled to credit the testimony of the Government's psychiatric expert over that of the defense expert. Similarly, the jury was entitled to find that the tapes showed Wedra to have had " . . . a willingness to commit the crime[s] for which he [was] charged as evidenced by the accused's ready response to the inducement." *United States v. Viviano*, 437 F.2d 295, 299 (2d Cir.), *cert. denied*, 402 U.S. 983, 91 S.Ct. 1659, 29 L.Ed.2d 149 (1971).

▮ We have not found a case in which an appellate court confronted the precise issue of the standard of appellate review of a trial judge's decision to grant a judgment of acquittal after the jury found sufficient evidence of predisposition, but there are comparable cases of sufficient weight to provide us with guidance. In *United States v. De Garces*, 518 F.2d 1156, 1160 (2d Cir. 1975) (issue of sufficiency of the evidence of knowledge that cocaine was secreted in imported beds), reviewing a judgment of acquittal after a jury verdict of guilty, we stated that "the key issue is whether there was any evidence upon which a reasonable mind might fairly conclude . . . beyond a reasonable doubt' [that the requisite knowledge existed]." (quoting *Taylor, supra* at 243. *Accord, United States v. Rojas*, 554 F.2d 938, 943 n.12 (9th Cir. 1977), *supplemented*, 574 F.2d 476 (9th Cir. 1978) (issue of sufficiency of the evidence in light of contradictory testimony by key Government witness) ("The test to be applied by the trial judge to a Rule 29(c) motion and by a reviewing court to his ruling are substantially identical."); *United States v. Clemones*, 577 F.2d 1247, 1255 (5th Cir.), *modi-*

*fied*, 582 F.2d 1373 (5th Cir. 1978), *aff'd after remand*, 599 F.2d 81 (5th Cir. 1979), petition for certiorari filed Dec. 12, 1979, 48 U.S.L.W. 3491 (issue of sufficiency of the evidence of conspiracy) ("We must decide whether the evidence, viewed in the light most favorable to the government, was sufficient to support the jury's conclusions that beyond a reasonable doubt the appellees conspired to violate [the statute].") A reasonable mind might fairly have concluded beyond a reasonable doubt that Wedra was predisposed to commit the acts for which he was charged and the district court erred in setting aside the jury's verdict.

■ We must next consider whether the district court abused its discretion in dismissing the indictment. While the Government's conduct in the investigation of this case could possibly offend the sensibilities of those unfamiliar with the problems of enforcing the federal narcotics laws, it does not rise to the level of "the truly extreme cases" in which dismissal of an indictment is proper. *United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979).[1] A district court does not have the power to dismiss an indictment that is legally sufficient simply because it deems the dismissal to be in the interests of justice. *United States v. Brown*, 602 F.2d 1073, 1076 (2d Cir. 1979).[2]

■ The standard for the dismissal of an indictment was clearly set forth in *United States v. Fields*, 592 F.2d 638, 647–48 (2d Cir. 1978), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979).[3]

The extreme sanction of dismissal of an indictment is justified in order to achieve one or both of two objectives: first, to eliminate prejudice to a defendant in a criminal prosecution; second, to "help to translate the assurances of the United States Attorneys into consistent performances by their assistants." [footnotes omitted—see footnote 4, *infra*]

\*　　\*　　\*　　\*　　\*　　\*

Even when a *prosecutorial* arm of the government unlawfully obtains evidence, we normally limit the · permissible sanction to suppression of the illegally obtained evidence. It is only in the rare case, where it is impossible to restore a criminal defendant to the position that he would have occupied vis-a-vis the prosecutor, that the indictment may be dismissed. [citations omitted—see footnote 4, *infra*] (emphasis in original)

\*　　\*　　\*　　\*　　\*　　\*

As for the deterrence objective of the district court's order here, proper regard for the public interest in the prosecution of crimes counsels restraint in dismissing an indictment for deterrence purposes unless the course of official misconduct is a demonstrated, long-standing one. We

---

1. In *Broward* the Government appealed from the district court's order suppressing certain evidence and dismissing a five-count narcotics indictment. This court reversed the order suppressing the evidence and remanded for reinstatement of the indictment. The most serious governmental misconduct found was the giving of false testimony by Government witnesses at the suppression hearing. We found that the appellees suffered no prejudice by this misconduct and we rejected deterrence of official misconduct as a justification for dismissal as there was no finding of widespread or continuous official misconduct.

2. In *Brown*, the Government appealed from the trial court's judgment dismissing an indictment in the exercise of its supervisory powers over the administration of justice on the ground that ". . . the government's behavior in the case threatened to compromise the integrity of the criminal trial and the administration of jus-

tice." 602 F.2d at 1076. The Government's misconduct consisted of the failure to supervise a paid informant who was found by the trial court to be "a wholly amoral individual." *Id.* Reversing and ordering the reinstatement of the indictment, we held that in view of the failure to show widespread or continuous governmental misconduct, dismissal of the indictment was not warranted.

3. In *Fields*, the Government appealed from the trial court's dismissal of substantial portions of a securities fraud indictment because of alleged misconduct by S.E.C. employees in attempting to settle a related civil action. The misconduct consisted of the employees' concealment of their reference of the case to the United States Attorney while leading defense counsel to believe the opposite was true. For the reasons quoted in the text, we reversed and remanded with directions to reinstate the unexpurgated indictment.

have approved this extreme sanction only when the pattern of misconduct is widespread or continuous. [citations omitted—see footnote 4, *infra*]

Only in very narrow circumstances is this "*most drastic remedy*" appropriate. *Id.* at 647 (emphasis in original).[4]

We have concluded that the Government's conduct in this case was not "unconscionable," as the district court concluded, and does not call for the extreme sanction of dismissal of the indictment under the *Fields* standard. This opinion should not be understood to bar Wedra from raising the merits of any issue he chooses on appeal, including those discussed above, should he seek appellate review of the judgment of conviction.

## ARTUSO

 Artuso contends that he is entitled to an acquittal on the two conspiracy counts because there is no one with whom he was proven to have conspired, Wedra's conviction having been set aside. This contention fails in light of our reversal of the district court's judgment as to Wedra. Further, there was considerable evidence that Artuso conspired with "others unknown." This evidence included references by Artuso to his "money people" and "his man," and his statement to Magno that he personally had seen the cocaine divided into bags. It is clear that

> . . . at least two persons are required to constitute a conspiracy, but the

identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown. *Rogers v. United States*, 340 U.S. 367, 375, 71 S.Ct. 438, 443, 95 L.Ed. 344 (1951).

Thus, even had Wedra been correctly acquitted, Artuso's conviction could stand. *United States v. Rivera Diaz*, 538 F.2d 461, 465 (1st Cir. 1976); *Cross v. United States*, 392 F.2d 360, 362 (8th Cir. 1968).

Artuso's entrapment claim is refuted by overwhelming evidence of predisposition and his due process claim is far weaker than that of Wedra, which we have previously discussed. His remaining claims concerning Marie Wedra's notes, the prosecutor's summation, the jury charge, the presence of a governmental employee on the jury, and the "juror's" letter have no merit and do not require any discussion.

The judgment of the district court as to appellant Artuso is affirmed. The judgment as to appellee Wedra is reversed. The district court is directed to reinstate the jury's verdict of guilty, to enter a judgment of conviction, and to impose sentence. Wedra may appeal from that judgment and this panel will be reconvened to consider the merits of such an appeal.

---

4. In *Fields*, this court cited in footnotes 22 and 23, several cases in which dismissal of an indictment was proper. As a comparison of those cases with the instant case may further elucidate our action in this case, we quote those footnotes herein:

> 22 *United States v. Jacobs*, 531 F.2d 87, 90 (2 Cir.) (dismissal of perjury count of indictment affirmed in interest of *prosecutorial* fairness in the same district regarding warning grand jury witness that she was a target of investigation), *vacated and remanded*, 429 U.S. 909, [97 S.Ct. 299, 50 L.Ed.2d 277], *aff'd on remand*, 547 F.2d 772 (2 Cir. 1976), *cert. dismissed*, 436 U.S. 31, [98 S.Ct. 1873, 56 L.Ed.2d 53] (1978); *United States v. Minnesota Mining & Mfg. Co.*, 551 F.2d 1106, 1112 (8 Cir. 1977) (dismissal of indictment affirmed because of breach of "*prosecutorial*

agreement, the inviolability of which rested completely in the province of the government *prosecutors*" (emphasis added)); *United States v. Henderson*, 525 F.2d 247, 250 & n.12 (5 Cir. 1975) (dismissal of indictment affirmed because of failure of *prosecutor* to furnish defendants with transcript of prior state court trial where three of defendants had been acquitted).

> 23 *United States v. Estepa*, 471 F.2d 1132, 1137 (2 Cir. 1972) (Friendly, J.) [judgments of conviction reversed with instructions to dismiss indictment for failure to heed repeated warnings by this court against the use of hearsay testimony before the grand jury]; *accord, United States v. Jacobs, supra*, 547 F.2d at 778 (on remand) [see facts *supra* n.22]

592 F.2d at 647.