**UNITED STATES of America**

v.

**Michael O. MYERS, Angelo J. Errichetti, Louis C. Johanson and Howard L. Criden, Defendants.**

**UNITED STATES of America**

v.

**Raymond F. LEDERER, Angelo J. Errichetti, Louis C. Johanson and Howard L. Criden, Defendants.**

**UNITED STATES of America**

v.

**Frank THOMPSON, Jr., John M. Murphy, Howard L. Criden and Joseph Silvestri, Defendants.**

**Nos. 80 CR 00249, 80 CR 00253 and 80 CR 00291.**

United States District Court, E. D. New York.

Aug. 5, 1980.

Edward R. Korman, U. S. Atty., E.D. N.Y., Brooklyn, N.Y., for plaintiff; Thomas P. Puccio, Attorney-in-Charge, Organized Crime Strike Force, Lawrence H. Sharf, Spec. Atty., Brooklyn, N.Y., of counsel.

Plato Cacheris, Washington, D.C., Jokelson & Rosen, Philadelphia, Pa., for defendant Myers; Neil E. Jokelson, Philadelphia, Pa., of counsel.

Brown & Brown, Jersey City, N.J., for defendant Errichetti; Raymond A. Brown and Henry F. Furst, Jersey City, N.J., of counsel.

Carroll, Creamer, Carroll & Duffy, Philadelphia, Pa., for defendant Johanson; John J. Duffy, Philadelphia, Pa., of counsel.

Melrod, Redman & Gartlan, Washington, D.C., for defendant Criden; Richard Ben-Veniste, Washington, D.C., of counsel.

Stephen E. Kaufman, New York City, Arnold & Porter, Washington, D.C., for defendant Thompson; Daniel A. Rezneck, Clifford D. Stromberg, Robert N. Weiner, Washington, D.C., of counsel.

Tigar & Buffone, Washington, D.C., for defendant Murphy; Michael E. Tigar, Washington, D.C., of counsel.

Alfred C. DeCotiis, John J. Barry, Newark, N.J., for defendant Silvestri.

*Memorandum of Decision and Order*

MISHLER, District Judge.

All of the defendants in the above-captioned cases move to dismiss the indictments charging that the manner in which the government conceived of and conducted its investigation was so outrageous and offensive as to bar the prosecutions as a matter of law. Essentially, it is the defendants' position that the instant indictments are not the product of a legitimate governmental investigation of ongoing criminal activity but rather are the result of a criminal scheme concocted by federal agents and carried through to fruition only by their meticulous and deceptive manipulation of unwitting targets.

The defendants attack every aspect of the government's investigation, now commonly referred to as "ABSCAM". It is charged that ABSCAM involved gross improprieties and outright illegalities on the part of FBI agents and Department of Justice personnel. According to the defendants the government created a criminal enterprise known as Abdul Enterprises, Inc., whose purpose was originally to uncover those dealing in contraband and stolen property, but which soon turned to luring political targets into a carefully orchestrated scheme of deceit and bribery. These political targets, moreover, were not chosen because of any suspicion that they were involved in criminal activity. But they were, nevertheless, enticed to attend meetings with government undercover agents posing as representatives of an Arab sheik anxious to invest his fabulous wealth in legitimate business enterprises in the target's political locale. Once in attendance, the defendants contend, they were lied to and maneuvered into compromising positions through a carefully developed plan in which calculated questions led imperceptibly to illicit activity. Moreover, the sordid scheme was made even more reprehensible by the very presence of government attorneys at or near the sites of these meetings, who saw to it, through continuing surrepti-

tious communication with the undercover operatives, that federal jurisdiction was "manufactured." The defendants also charge that in the course of its investigation here the government, in order to protect its undercover operation, violated numerous state and federal laws, as well as the internal regulations and policies of the FBI and the Department of Justice. For example, it is alleged that government agents filed false affidavits with a federal court; allowed one of its undercover operatives to use Abdul Enterprises in order to swindle numerous businessmen; illegally established a front organization and filed false statements with federal agencies; introduced misrepresentations into the banking system by creating a bogus account; and obtained a lease on a townhouse in Washington, D.C. by resorting to false pretenses.

The defendants conclude that these systematic abuses by law enforcement authorities culminating in the instant indictments are unprecedented in scale. Accordingly, "[t]he appropriate sanction, dictated by precedent and compelled by the need to preserve the integrity of the judicial process, is dismissal of the indictment." Memorandum of Frank Thompson, Jr. In Support of Motion to Dismiss the Indictment on the Ground of Governmental Overreaching, at p. 1.

*Discussion*

It hardly needs to be pointed out that the defendants' claim of gross governmental misconduct in its investigation does not involve the application of the traditional defense of entrapment first recognized by the Supreme Court almost fifty years ago in *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). It is now well-settled that such a defense requires acquittal only where the government fails to establish the defendant's predisposition to commit a crime found to have been instigated by the government. *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Thus, where a defendant estab-

lishes by a preponderance of the evidence that the crime of which he stands accused was initiated or induced by a government agent, the burden shifts to the government to establish beyond a reasonable doubt that the defendant was predisposed to commit the offense. *United States v. Steinberg*, 551 F.2d 510, 513–14 (2d Cir. 1977). Moreover, this is an issue which must normally be left to the jury. *Sherman v. United States, supra*, 356 U.S. at 377, 78 S.Ct. at 823.

At this juncture the defendants eschew reliance on this defense. Instead they argue that the instant prosecutions are wholly barred because the government's misconduct has been so egregious as to constitute a denial of due process. Alternatively they assert that this court should exercise its supervisory powers and dismiss the indictments in order to discourage such abhorrent government actions.

We start with the proposition that a federal court does have the power to preclude a criminal prosecution because of governmental misconduct. Such misconduct may result from overinvolvement in the very crimes of which the defendants are accused, *i.e.*, governmental manufacturing of the illicit activity, or from improper activities relating to other aspects of the investigation or preparation of the case. While this distinction is artificial and imprecise, *see, U. S. v. Archer*, 486 F.2d 670 (2d Cir. 1973); *see also U. S. v. Artuso*, 618 F.2d 192 (2d Cir. 1980), it does provide a useful framework for our discussion.

In *United States v. Russell, supra*, Mr. Justice Rehnquist, speaking for a five-member majority of the Court, noted in rejecting the defense of entrapment where predisposition had been established, that the Court "may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, *cf. Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) ...." 411 U.S. at 431–32, 93 S.Ct. at 1643. The four dissenters would have gone further and held that any governmental instigation or inducement of illic-

it activity constituted entrapment. *Id.* at 436, 93 S.Ct. at 1645 (Douglas, J., dissenting); *Id.* at 439, 93 S.Ct. at 1646 (Stewart, J., dissenting). Moreover, despite the subsequent abandonment of the majority's view of "due process principles" by three members of the Court, *Hampton v. United States, supra,* 425 U.S. at 485, 96 S.Ct. at 1648 (plurality opinion per Rehnquist, J.), it is apparent that a majority of the present Court still subscribes to the view that the government's conduct may be so offensive as to preclude prosecution either under principles of due process or the "supervisory power" of the Court. *Id.* at 491, 96 S.Ct. at 1650 (Powell, J., concurring); *Id.* at 495, 96 S.Ct. at 1653 (Brennan, J., dissenting). Our own court of appeals has so held on more than one occasion. *See, e.g., United States v. Nunez-Rios,* 622 F.2d 1093 at 1094 (2d Cir. 1980); *United States v. Corcione,* 592 F.2d 111 (2d Cir.), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1545, 59 L.Ed.2d 794 and 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979); *United States v. Archer, supra.* Other circuit courts are in agreement. *See, e.g., United States v. Twigg,* 588 F.2d 373 (3d Cir. 1978); *United States v. Graves,* 556 F.2d 1319 (5th Cir. 1977), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1485, 55 L.Ed.2d 516 (1978).

While these cases support the proposition that a prosecution may, in some circumstances, be barred by outrageous governmental involvement in the crime charged, little has been said as to how that proposition is to be applied to concrete factual situations. To date, the Supreme Court has not reversed a conviction on this basis. We can be sure, however, that "[p]olice overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction." *Hampton v. United States, supra,* 425 U.S. at 495 n.7, 96 S.Ct. at 1653 n.7 (Powell, J., concurring). The federal courts are not charged with the responsibility of policing the prosecutorial arm of the government. Nor are we free to close our own doors to the public prosecutor merely because the government's conduct in its investigation offends our sensibilities. Clearly, this court has no " 'chancellor's foot' veto over law enforcement practices of which [we do] not approve." *United States v. Russell, supra,* 411 U.S. at 435, 93 S.Ct. at 1644; *United States v. Artuso, supra.*

With regard to the defendants' allegations of other substantial improprieties and crimes committed by law enforcement authorities we note that our authority to supervise such practices in the context of a criminal prosecution is narrowly circumscribed. As we have pointed out in an accompanying memorandum of decision and order addressing the issue of pre-indictment publicity, the Second Circuit has carefully limited the proper exercise of such supervisory power to truly exceptional cases. *See United States v. Artuso, supra,* 618 F.2d at 196–97; *United States v. Brown,* 602 F.2d 1073, 1076 (2d Cir.), *cert. denied,* 444 U.S. 952, 100 S.Ct. 427, 62 L.Ed.2d 323 (1979); *United States v. Broward,* 594 F.2d 345 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979); *United States v. Fields,* 592 F.2d 638, 647–48 (2d Cir. 1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979). Moreover, as we have also pointed out, the extent of this court's supervisory authority over law enforcement officials may be even more limited than these cases suggest in light of recent Supreme Court decisions. *See United States v. Payner,* 447 U.S. 727, 100 S.Ct. 2439, 65 L.Ed.2d 468 (1980); *United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979).

Because the parameters of these principles are so ill-defined, we do not think that it is possible for the court to rule on the defendants' motions without a fully developed factual record. The defendants urge the court to conduct a pre-trial evidentiary hearing for the purpose of ascertaining the degree of governmental misconduct engaged in. While there is some support for proceeding in such a fashion, *see United States v. Nunez-Rios, supra,* at 1098, we do not think that pre-trial proceedings on this issue are appropriate here. The defendants challenge, as we indicated above, almost every facet of the government's investigation. A hearing on the question of prosecutorial misconduct would undoubtedly be an extremely lengthy one. Much of the evidence adduced would only mirror the proof

that would inevitably be introduced at trial. Moreover, such extensive proceedings would only serve to heighten the potential for pre-trial publicity which would make it increasingly difficult to select a jury and provide the defendants with a fair trial.

Accordingly, the court reserves decision on each of the defendants' motions to dismiss the indictments on the grounds of governmental misconduct until the conclusion of the government's case in each particular action. At that time the court will, if there appears any colorable basis for the asserted claims, conduct a supplemental hearing in order to afford the defendants involved the opportunity to supplement the record with additional testimony and documentary evidence.

SO ORDERED.