UNITED STATES of America

v.

**Louis IPPOLITO, Defendant.**

**UNITED STATES of America**

v.

**Neil RICHARDS, Defendant.**

**UNITED STATES of America**

v.

**Carl CARRERA, Defendant.**

**Nos. 80CR475, 80CR476 and 80CR478.**

United States District Court,
E. D. New York.

March 19, 1981.

---

Edward R. Korman, U. S. Atty., Brooklyn, N. Y., E. D. New York, Thomas P. Puccio, Attorney-in-Charge, U. S. Dept. of Justice, Organized Crime Strike Force, E. D. New York By Douglas F. Behm, Sp. Atty., Brooklyn, N. Y., for United States.

Michael Critchley, West Orange, N. J., for defendant Ippolito.

David Breitbart, New York City, for defendant Richards.

Ronald P. Fischetti, New York City, for defendant Carrera.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

On April 12, 1979, indictment 79 CR 226 was returned charging defendants Ippolito, Richards and Carrera and 13 co-defendants in a wide-ranging conspiracy to violate federal narcotics laws and also substantive violations of those laws.[1] The conspiracy was alleged to exist from January 1970 continuously until the filing of the indictment. Its objects were alleged to be the unlawful importation, transportation, sale and purchase of marijuana and hashish, and the unlawful possession and distribution of cocaine. At the conclusion of the government's case at trial, all defendants moved for judgments of acquittal on the conspiracy count pursuant to Rule 29, F.R.Cr.P. The court denied these motions and, following deliberations during six days, the jury was unable to reach a verdict on the conspiracy count as to these three defendants. Without the objection of counsel, a mistrial as to these defendants was declared. Renewed motions under Rule 29 were not pursued.

The government thereafter reindicted these defendants in the three above-captioned indictments, each alleging one count

---

1. The indictment contained seven counts. Defendants Ippolito and Richards were named in Count 5, charging distribution and possession with intent to distribute marijuana in December 1975. The jury was unable to reach a verdict as to these defendants on this count. Count 6, naming defendant Carl Carrera and others in another substantive charge involving marijuana, was dismissed prior to trial.

of conspiracy.[2] Claiming that their rights against being placed twice in jeopardy for the same offense would be violated by second trials, defendants have moved to dismiss the conspiracy counts in these indictments.

Defendants premise their argument on the assertion that their earlier Rule 29 motions were improperly denied. Accordingly, and notwithstanding the hung jury, they contend that these cases must be considered to be in the posture of proposed second trials following prior *acquittals* on the conspiracy count. Finally, defendants assert that the conspiracy alleged in 79 CR 226 is in law and in fact the *same* conspiracy as those alleged in each of the instant indictments. The court is unable to accept that premise and denies defendants' motions for the reasons which follow.

Following the presentation of the government's case, defendants argued that the evidence adduced proved, as a matter of law, that there was not one single conspiracy existing during nine years, but rather multiple and possibly overlapping conspiracies during that period. Thus, it was contended that even if the prosecution had made a *prima facie* showing of defendants' involvement in lesser conspiracies, the government had failed as a matter of law to prove the larger conspiracy charged in the indictment. Court and counsel engaged in extended argument on these motions and considered them with particularity in the light of the opinion in *United States v. Cambindo,* 609 F.2d 603 (2d Cir. 1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980).[3]

In *Cambindo,* the government had indicted 27 defendants in one conspiracy. The Court of Appeals, reviewing a mass of evidence that showed "forty-eight or so specific transactions" implicating complex permutations of defendants, characterized "the boundaries of the alleged single conspiracy" as more "diffuse" than any it had ever seen. 609 F.2d at 608, 622.

The prosecution in *Cambindo* had sought to prove a single conspiracy where the alleged "single source of supply", rather than a central person or group of persons, was no more specifically shown than an area of a Latin American nation. Although "similar methods" of smuggling were used, and many of the various deals were transacted at the same bar in Brooklyn, the Court of Appeals pointed out:

"Although a set of facts of this kind might be enough to support a jury finding of a single conspiracy if all the actors were transactionally related or, as in [*U. S. v.*] *Moten,* [564 F.2d 620 (2d Cir.), *cert. denied,* 434 U.S. 959 [98 S.Ct. 489, 54 L.Ed.2d 318] (1977)] they were united into a single enterprise by a central figure, a jury clearly is not required to find such a conspiracy. When the facts are such that a jury might reasonably find *either* a single conspiracy or multiple conspiracies, then the trial judge must not limit their deliberations to a single conspiracy finding." 609 F.2d at 626.

Moreover, it was held that even if a jury finds multiple conspiracies, it must convict a given defendant if it finds beyond a reasonable doubt "that he was a member of the conspiracy charged in the indictment and not some other conspiracy." 609 F.2d at 625, *quoting United States v. Tramunti,* 513 F.2d 1087, 1107 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

It is apparent, then, that the convictions in *Cambindo* were reversed because the district court had found a single conspiracy as a matter of law and had taken this determination away from the jury. This court is unable to see, as defendants argued in the case at bar, how *Cambindo* stands for the proposition that a district

---

2. 80 CR 478, naming Carl Carrera, alleges only the conspiracy charge. 80 CR 475, naming Louis Ippolito, also alleges two substantive charges. 80 CR 476, naming Neil Richards, alleges one substantive violation in addition to the conspiracy charge.

3. Argument on the Rule 29 motions took place during portions of two trial days and, as to these three defendants alone, filled over 150 pages of transcript.

court, when it doubts the strength of the government's case, can or should find that the evidence proved multiple conspiracies as a matter of law, *and* that none of the conspiracies proved was the one alleged in the indictment. Such a rule would seriously impinge upon the proper role of the jury in a criminal case. As the Court of Appeals for this Circuit has said "with respect to the single vs. multiple conspiracy matter [,] We have stated in the past that this is a question singularly well-suited to resolution by the jury." *United States v. McGrath*, 613 F.2d 361, 367 (2d Cir. 1979), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980). *See United States v. Armedo-Sarmiento*, 545 F.2d 785, 789–90 (2d Cir. 1976), *cert. denied*, 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977). This is so because the nature and extent of the illegal agreement is a question of fact. *United States v. Finkelstein*, 526 F.2d 517, 522 (2d Cir. 1975), *cert. denied*, 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); *United States v. Torres*, 519 F.2d 723 (2d Cir. 1975).[4]

■ Another consideration to be noted before the prosecution's evidence in the previous trial is examined is the standard to be applied on a motion for a judgment of acquittal. In this regard, the district judge

"must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter." *United States v. Taylor*, 464 F.2d 240, 243 (2d Cir.

1972), *quoting Curley v. United States*, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232 (D.C.Cir.), *cert. denied*, 331 U.S. 837 [67 S.Ct. 1511, 91 L.Ed. 1850] (1947). Furthermore, it is axiomatic that on such a motion, the district court must resolve all reasonable inferences in favor of the prosecution, and must view the evidence in the light most favorable to the government. *United States v. Artuso*, 618 F.2d 192, 195 (2d Cir. 1980).

With these principles in mind, the court is of opinion that it must reaffirm its conclusion that defendants Ippolito, Richards and Carrera were not entitled to judgments of acquittal upon the close of the prosecutor's case in the trial of indictment 79 CR 226.

■ At trial, the government offered the testimony of several alleged co-conspirators, both indicted and unindicted. These witnesses provided evidence of a central "operational core", *United States v. Moten, supra*, 564 F.2d at 624–26, so critically absent in *Cambindo*, that united the conspirators into a single enterprise. Throughout the nine year life of the alleged conspiracy, indicted co-conspirators Donald Brown and Alan Seyfert, in particular, apparently served as a central source of information and funds and supplied the critical contacts at John F. Kennedy International Airport necessary for the success of the group's plans to import narcotics from abroad.

Several of the defendants had known each other as neighbors within the same community on Long Island. In addition, from evidence of repeated narcotics dealings with and through Brown and Seyfert, the jury was entitled to find that all defendants had become well acquainted and knit together into a close group of conspirators knowledgeable of each others' activities. *Cf. United States v. Delli Paoli*, 603 F.2d 1029 (2d Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 264, 62 L.Ed.2d 182 (1979) (upholding finding of single conspiracy where co-conspirators knew with certainty

---

**4.** The question whether a district court must *always* leave to the jury the determination of single vs. multiple conspiracies was not, as counsel argued, before this court on the Rule 29 motions, nor, as today's discussion indicates, need the court reach that question on these motions.

that other suppliers and dealers existed, even though they did not know the others personally). *See United States v. Tramunti, supra* (discussing unifying effect of "co-operation, trust and a mutual source of supply").

It is true that not all of the defendants participated in all, or even most, of the many narcotics deals over the nine year period, but "a single conspiracy is not transposed into a multiple one simply by lapse of time, change of membership, or a shifting emphasis in its locale of operations." *Cambindo, supra,* 609 F.2d at 625; *United States v. Vila,* 599 F.2d 21, 24 (2d Cir.), *cert. denied,* 444 U.S. 837, 100 S.Ct. 73, 62 L.Ed.2d 48 (1979); *United States v. Armedo-Sarmiento, supra.*

On cross-examination, defense counsel vigorously attacked the credibility of certain government witnesses, relying in part on the circumstances of their indictments and possible motives to curry favor with the prosecution, as well as the personal narcotics use of some witnesses. However, on a Rule 29 motion, the court would have seriously erred had it usurped the clear jury function of assessing the credibility of witnesses and the weight to be given their testimony. *United States v. Walker,* 613 F.2d 1349, 1352 (5th Cir.), *cert. denied,* 446 U.S. 944, 100 S.Ct. 2172, 64 L.Ed.2d 800 (1980); *United States v. Artuso, supra.*

As well as being linked to the organizational core of the alleged conspiracy, each of these defendants was shown to be involved in numerous and varied narcotics transactions over several years. There was evidence of Carrera's involvement in marijuana and cocaine deals at least as early as 1972 and as late as 1977. Testimony was offered implicating Ippolito in repeated massive sales of marijuana over at least four years. Several witnesses recounted

Richards' part in separate marijuana, hashish, cocaine and "Thai stick" transactions, during eight years of the alleged conspiracy. The involvement of each defendant, rather than being a series of isolated acts, amounted to an extended history that was more than sufficient to put the question to the jury and justify an "inference that each knew he was involved in a criminal enterprise of substantial scope." *United States v. Magnano,* 543 F.2d 431, 435 (2d Cir. 1976), *cert. denied,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977), *quoting United States v. DeNoia,* 451 F.2d 979, 981 (2d Cir. 1971) (*per curiam*).

In addition, it is clear that the court was required to permit the jury to draw certain inferences from the sheer magnitude of these importations and distributions. *United States v. Miley,* 513 F.2d 1191, 1206–07 (2d Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 74, 46 L.Ed.2d 62 (1975). *See United States v. Panebianco,* 543 F.2d 447, 453 (2d Cir. 1976), *cert. denied,* 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977). Each of these defendants was linked to multiple sales of hundreds of pounds of marijuana. One deal, in 1975, involved over 7,500 pounds of marijuana valued at more than one and one-half million dollars, and another, the next year, brokered over 40,000 pounds of the substance. There was evidence of Carrera's participation in several transactions concerning kilograms of cocaine valued at over $25,000.00 per kilogram. Richards was implicated in massive sales of marijuana and in sales of hundreds of pounds of "Thai sticks."[5]

After considering all of the government's evidence—which has only been briefly and selectively highlighted for the purposes of these motions—the court reaffirms its decision that there was sufficient evidence to submit to the jury the conspiracy count in indictment 79 CR 226. The court was at

**5.** It was argued that defendant Richards' conceded purchases of cocaine, which were in smaller amounts than those of some of his co-conspirators, were solely for his personal use and not for distribution. This argument, however, by its own terms concedes that Richards knew that the same men with whom he was effecting massive marijuana and hashish deals were also involved in the distribution of

cocaine. The government was not required to show that Richards actually participated in every aspect of the conspiracy. In any event, the cocaine Richards bought was nearly pure and was in quantities that could easily have been diluted and profitably resold. It was for the jury to decide for what purpose Neil Richards made these cocaine purchases.

trial, and remains, unable to say that any of these defendants was the "occasional minnow [that] may wriggle free" on a Rule 29 motion, from the "big conspiracy net [set] to catch the big fish in the criminal sea." *United States v. Tramunti, supra,* 513 F.2d at 1112.

■ Having concluded that directing judgments of acquittal would have been improper, the court is of the view that the instant motions boil down to objections to the simple situation of second trials following hung juries. Viewed as such, these cases are squarely governed by the long-established rule that the Double Jeopardy Clause does not bar a second trial following the declaration of a mistrial due to "manifest necessity", *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824); *United States v. DiFrancesco,* —— U.S. ——, ——, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980); *Arizona v. Washington,* 434 U.S. 497, 509–10, 98 S.Ct. 824, 832–33, 54 L.Ed.2d 717 (1978), "[t]he classic example [of which] is a mistrial because the jury is unable to agree. *U. S. v. Perez, supra.*" *Downum v. United States,* 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1962). Since there is no claim on these motions of any abuse of discretion in the declaration of a mistrial on the sixth day of fruitless deliberations, the court is of opinion that the Double Jeopardy

Clause of the Fifth Amendment presents no bar to the trials of these defendants on these three indictments. *Arizona v. Washington, supra; United States v. MacQueen,* 596 F.2d 76, 82 (2d Cir. 1979). Accordingly, the motions are denied.[6]

So ordered.

---

**6.** At least one defendant has indicated to the court a desire to appeal a denial of the instant motion. In this regard, the Supreme Court has held that the denial of a Double Jeopardy motion is an appealable order under 28 U.S.C. § 1291. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). That Court, however, taking note of the dangers of piecemeal and potentially dilatory appeals in criminal cases, cautioned that its ruling was limited to genuine Double Jeopardy motions and stated that:

"Any other rule would encourage criminal defendants to seek review of, or assert, frivolous double jeopardy claims in order to bring more serious, but otherwise nonappealable questions to the attention of the courts of appeals prior to conviction and sentence." 431 U.S. at 663, 97 S.Ct. at 2042.

In the cases at bar, this court would not be so imprudent as to say that a serious issue may not be presented on appeal—at the appropriate time—from the denials of the Rule 29 motions. However, to characterize these as true Double

Jeopardy claims would in effect be permitting, prior to final judgment, appeal from denial of a Rule 29 motion in any case that resulted in a hung jury. Since the attorney who neglects to move under Rule 29 is rare, such a holding would allow the mischievous undermining of the well-established rule that there is no double jeopardy bar to retrial following a properly declared mistrial due to a hung jury. *See Arizona v. Washington, supra.* Finally, the court notes that the Courts of Appeals for two other Circuits have held that, consistent with *Abney v. United States, supra,* a district court is not divested of jurisdiction to proceed by the filing of an appeal from the denial of a frivolous Double Jeopardy motion. *See United States v. Leppo,* 634 F.2d 101 (3d Cir. 1980); *United States v. Dunbar,* 611 F.2d 985 (5th Cir. 1980), and another Circuit Court has suggested that the district courts consider the imposition of sanctions for the bringing of such motions. *See United States v. Burt,* 619 F.2d 831, 838 n.10 (9th Cir. 1980). *See also United States v. Carnes,* 618 F.2d 68 (9th Cir. 1980).