520 F.Supp. 96 (1981)
UNITED STATES of America
v.
Carmine PERSICO, Defendant.
No. 81 CR 42.
United States District Court, E. D. New York.
August 7, 1981.
*97 Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (Joel Cohen, Sp. Atty., Brooklyn, N. Y., of counsel), for United States.
Barry Ivan Slotnick, P. C., New York City (Barry Ivan Slotnick, and Jay L. T. Breakstone, New York City, of counsel), Oteri & Weinberg, Boston, Mass. (Joseph S. Oteri, and Martin G. Weinberg, Boston, Mass., of counsel), for defendant.

MEMORANDUM AND ORDER
NICKERSON, District Judge.
Defendant Carmine Persico has been charged in six counts and has filed motions seeking various forms of relief.
The first count alleges a conspiracy from May 18, 1977 to November 1978 between Persico, Andrew T. Russo, Hugh McIntosh, Victor Puglisi, and others to defraud the *98 United States and its courts and agencies and to commit various acts of bribery and obstruction of justice. 18 U.S.C. § 371. In substance this count alleges that the conspirators agreed they would pay Richard Annicharico, a special agent of the Internal Revenue Service posing as corrupt, to influence the decision of Persico's motion pursuant to 28 U.S.C. § 2255 seeking vacation of a fourteen year sentence, to arrange to have Persico brought from the United States Penitentiary in Atlanta, Georgia to the Metropolitan Correctional Center in New York, and to influence the disposition of criminal tax matters involving Russo, Charles Panarella and Christopher Furnari.
Counts two through six charge Persico with substantive offenses. Count two charges him and others with bribing Annicharico to make false representations, in violation of his lawful duty, in order to keep Persico in the Metropolitan Correctional Center and prevent his return to Atlanta. 18 U.S.C. §§ 201(b) and 2. Count three alleges that Persico and others bribed Annicharico to influence the decision in the proceedings to vacate sentence. 18 U.S.C. §§ 201(b) and 2. Count four alleges that Persico and others obstructed justice as to the same proceeding. 18 U.S.C. §§ 1503 and 2. Count five charges Persico and others with bribing Annicharico to influence Furnari's criminal income tax matter. 18 U.S.C. §§ 201(b) and 2. Count six charges Persico and others with obstructing justice as to that matter. 18 U.S.C. §§ 1505 and 2.
Each of Persico's contentions will be addressed in turn.

I
Persico moves to dismiss the indictment on the ground that the government's conduct constituted entrapment as a matter of law, interfered with his right to counsel, violated a duty to care for prisoners under government control, and was so outrageous as to deny him due process under the Fifth Amendment and the right to counsel under the Sixth Amendment.
Plainly the court cannot decide on the basis of the papers submitted whether Persico was entrapped as a matter of law. Under settled law his predisposition is critical to that issue. Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976). Assuming that the Supreme Court has left open the question of whether a predisposed defendant in a "rare" case may defend on the ground that the government's part in the crime has reached "a demonstrated level of outrageousness," see Powell, J., concurring in Hampton v. United States, 425 U.S. at 495 n. 7, 96 S.Ct. at 1652 n. 7; United States v. Myers, et al., 510 F.Supp. 319 (E.D.N.Y. 1981, per Pratt, J.), the court deems it wise to defer consideration of this matter until the evidence has been presented at trial.

II
Persico moves to suppress conversations on January 11, 1978 between Persico, Annicharico and Special Attorney Joel Cohen of the Department of Justice's Organized Crime Strike Force in this district, on January 18, 1978 between Persico and Annicharico, and between Persico, his attorney Marc Rosenberg, Annicharico and Cohen, and on February 2, 1978 between Persico, McIntosh and Annicharico.
Persico claims that his statements during these conversations resulted from custodial interrogations within the meaning of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the warnings required by that decision were not provided. Each of the conversations was secretly recorded, and the transcripts are before the court.
In December 1977 Annicharico arranged for a writ of habeas corpus ad testificandum to bring Persico from Atlanta to New York. On the morning of January 11, 1978 he was brought to the Strike Force offices to speak with Annicharico and Cohen. Cohen told him that he had been brought there with the expectation that he would testify that morning before a grand jury investigating the homicide of Vincent Papa in the Atlanta Penitentiary. Cohen then asked if Persico had an attorney, and he responded that his attorney was Rosenberg *99 with whom he had not conferred. Persico called Rosenberg's office and was informed that he was not in and would not be expected until the next day. In response to Annicharico's question Persico said that he did not wish to proceed without counsel, and Cohen said he would obtain a writ directing Persico's appearance later when counsel could attend. Persico was not questioned at all.
On the morning of January 18, 1978 Annicharico again brought Persico to the Strike Force offices. As they were coming upstairs from the basement detention area in this courthouse, Annicharico asked, "You know what to say at this thing?" and Persico responded, "Yeah." They then joined Cohen and Rosenberg. After Cohen explained that Persico would be brought before the grand jury to answer questions relating to the Papa investigation, Persico declared, "Well I have a statement on it." He then said that he knew nothing about Papa and first met him at the Atlanta prison. He added that he knew people who did business with Papa and that Papa was killed over his drug business in prison. Cohen told Persico that he would ask him specific questions in the grand jury regarding specific names "[b]ecause it seems to me, reading between the lines that you know something." At this point Annicharico asked to speak privately with Cohen. They returned four and a half minutes later, and Cohen said that he would not bring Persico before the grand jury that day but would put over the proceeding for a while and perhaps bring him back at that time.
Annicharico then brought Persico downstairs to the detention area. During this time they had a conversation from which it could be inferred that Annicharico was purporting to act corruptly on Persico's behalf and with his encouragement or acquiescence.
On February 2, 1978 Annicharico spoke at length with McIntosh and Persico in this courthouse. Much of the discussion dealt with the pending motion in the section 2255 proceeding. References appear to have been made to paying Annicharico for his assistance in influencing the decision of the motion favorably to Persico and to paying a third person for submitting an affidavit supporting his position.
In Miranda v. Arizona, supra, the Supreme Court said that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelled pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. at 467, 86 S.Ct. at 1624. To give meaningful protection to Fifth Amendment rights the court forbade the use of statements by a defendant interrogated by officers unless he is informed that he has the right to remain silent, that anything he says may be used against him, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him. Id. at 444, 86 S.Ct. at 1612. Of course, these warnings are not required if the defendant's attorney is present at the interrogation. Id. at 466, 86 S.Ct. at 1623.
In Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1963), the Supreme Court held that the requirement of such warnings is not limited to interrogations of "one who is `in custody' in connection with the very case under investigation." Id. at 4, 88 S.Ct. at 1504. Mathis, serving a sentence in state prison, was questioned by an Internal Revenue Service agent about his federal income tax returns and made incriminatory statements. No counsel was present and no Miranda warnings given. On his appeal from his income tax conviction the government defended the admission of his statements on the ground that warnings were required only when a person is in custody in connection with the investigation which is the subject of the questioning. The Court rejected this argument, finding "nothing in the Miranda opinion which calls for a curtailment of the warnings to be given persons under interrogation by officers based on the reason why the person is in custody." Id. at 4-5, 88 S.Ct. at 1504-1505.
*100 Persico says that he was "in custody" and that, since he was given no warnings, nothing he said in the January 11, January 18, and February 2 conversations may be used against him. Acceptance of his contention would end for practical purposes all undercover investigations in every jail and prison. This court does not interpret the Miranda and Mathis decisions so broadly.
Even if Persico had been entitled to warnings, there is no basis for excluding his statements made in the January 11 conversation with Annicharico and Cohen or the January 18 conversation with Annicharico, Cohen and Rosenberg. On the first occasion there was no interrogation, and on the second Persico's attorney, Rosenberg, was present throughout.
Assuming that Persico's statements made in the January 18 conversations with Annicharico and in the February 2 conversation with Annicharico and McIntosh were elicited by "interrogation", the court holds that no warnings were required. It is true that Persico knew that Annicharico was a government agent. But the purpose of the Miranda warnings is to protect a person from self-incrimination as a result of the "inherently compelled pressures" of an in-custody interrogation by government agents. 384 U.S. at 467, 86 S.Ct. at 1624. Such pressures are perceived only when the accused supposes the official is acting in the name of or on behalf of the government.
This is not a case of a defendant who might have felt intimidation or pressure in the belief that he was speaking to an official honestly performing law enforcement duties. Persico believed that Annicharico was a corrupt agent and a willing accomplice and dealt with him only on the supposition that he was acting contrary to the government's interest.
There was misplaced trust in this relationship but not compulsion, and unless Persico was to some degree "compelled" there was no violation of his Fifth Amendment privilege against self-incrimination. Hoffa v. United States, 385 U.S. 293, 304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966).
An individual participating in a crime with an undercover agent and not yet indicted for the crime is not protected by the Fourth Amendment because of his "misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." Hoffa v. United States, supra at 302, 87 S.Ct. at 413; Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). Cf. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The Court of Appeals for the Second Circuit has held that an accused who, mistakenly putting his trust in a government informer, participates with him in an illegal transaction "is not entitled to the assistance of counsel while committing his crime." United States v. Haynes, 398 F.2d 980, 988 (2d Cir. 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124 (1969).
Even if under the Mathis decision an official of the government purporting to act on its behalf must give warnings to a prisoner whenever he is interrogated about any matter which may lead to prosecution, see Carter v. McGinnis, 351 F.Supp. 787 (W.D. N.Y.1972); but see Cervantes v. Walker, 589 F.2d 424 (9th Cir. 1979), it would be fatuous to interpret the Mathis opinion to require warnings when a prisoner is planning ongoing crimes with an official he believes to be corrupt. None of the interests which the Miranda decision sought to advance would be served if prisoners were permitted to engage in crimes free from the concern that their associates might be undercover agents.
Moreover, even if Persico were entitled to Miranda warnings, any of his statements amounting to attempted bribery of Annicharico would be admissible. Although failure to give Miranda warnings may require the exclusion of subsequent statements in a prosecution for crimes already committed, that failure does not make inadmissible statements which are themselves crimes. See United States v. Gentile, 525 F.2d 252 (2d Cir. 1975), cert. denied, 425 U.S. 903, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976); United States v. Perdiz, 256 F.Supp. 805 (S.D.N.Y. 1966).
*101 Persico points out that a prisoner serving time may be more susceptible to government abuse than a suspect in custody. This contention, perhaps pertinent to Persico's entrapment defense and his claim of improper government conduct, is hardly relevant under the circumstances presented here to a determination that Persico's statements were "compelled" in violation of the Fifth Amendment.
The motion to suppress is denied.

III
Persico moves to dismiss count six of the indictment, which alleges that defendant violated 18 U.S.C. § 1505 by seeking to obstruct an Internal Revenue Service investigation of Christopher Furnari by offering money to Annicharico to induce him to influence the investigation.
That section reads in pertinent part:
Whoever corruptly, or by threats of force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which such proceeding is being had before such department or agency of the United States ... shall be fined not more than $5,000 or imprisoned not more than five years or both.
in the agency by law. Since the F.B.I. has no rulemaking or adjudicative powers regarding the subject matter of this indictment, its investigation was not a `proceeding' within the meaning of the statute." 511 F.Supp. at 455.
The I.R.S., unlike the F.B.I., has rulemaking powers. 26 U.S.C. § 7805. Thus, under the reasoning of the Higgins case, the criminal investigation of Furnari was an agency "proceeding" within the scope of the I.R.S.'s rulemaking powers.
Other cases have indicated that an administrative investigation like that into Furnari's income tax returns is a "proceeding" within the meaning of 18 U.S.C. § 1505. United States v. Vixie, 532 F.2d 1277, 1278 (9th Cir. 1976) (§ 1505 prosecution for submitting false document in response to I.R.S. subpoena). See, e.g., United States v. Alo, 439 F.2d 751 (2d Cir.), cert. denied, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971); United States v. Fruchtman, 421 F.2d 1019 (6th Cir.), cert. denied, 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970). "Congress clearly intended to punish any obstruction of the administrative process ... at any stage of the proceedings, be it adjudicative or investigative. Congress did not limit the term `proceeding' as used in § 1505 to only those acts committed after a formal stage was reached, and we cannot so limit the term." Rice v. United States, 356 F.2d 709, 712 (8th Cir. 1966).
The Furnari investigation was an agency "proceeding" under section 1505 although it was a criminal investigation. In United States v. Browning, 572 F.2d 720 (10th Cir.) cert. denied, 439 U.S. 822, 99 S.Ct. 88, 58 L.Ed.2d 114 (1978), the Customs Service investigated defendant's importation practices to uncover false invoices fraudulently reducing the amount due on import duties. The court held that this investigation was a "proceeding" under section 1505 even though it was preliminary to a criminal indictment.
Moreover, it would be senseless to interpret section 1505 to punish obstruction of civil but not criminal tax investigations. The line between the two is indistinct and impermanent. "For a fraud investigation to be solely criminal in nature would require *102 an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil penalties." United States v. LaSalle National Bank, 437 U.S. 298, 314, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978). Even when an I.R.S. agent concludes that a case should be referred for criminal prosecution, the conclusion must still survive a multi-layered agency review process, and at any stage the I.R.S. can abandon the criminal prosecution. Id. at 314-315, 98 S.Ct. at 2366.
The motion to dismiss count six is denied.

IV
Persico claims that the first count of the indictment is mispled because it charges both a conspiracy to defraud the United States and a conspiracy to commit specified offenses. This claim has no merit.
"[A]n indictment that charges in a single count both conspiracy to defraud and conspiracy to commit offenses is not duplicitous, since `neither a multiplicity of objects nor a multiplicity of means converts a single conspiracy into more than one offense.'" United States v. Mitchell, 397 F.Supp. 166, 171 (D.D.C.1974), aff'd, 559 F.2d 31 (D.C.Cir. 1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) quoting May v. United States, 175 F.2d 994, 1002 (D.C.Cir.), cert. denied, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949); United States v. Manton, 107 F.2d 834, 839 (2d Cir. 1938), cert. denied, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012 (1940). The motion is denied.

V
Persico also moves to dismiss the conspiracy count because it charges multiple conspiracies. The court finds that count one alleges a single conspiracy involving interrelated corrupt transactions with Agent Annicharico.

VI
Persico moves to strike paragraph one of count four of the indictment as unnecessary and highly prejudicial surplusage. That paragraph states:
On or about June 6, 1969 the defendant, CARMINE PERSICO, was sentenced by the United States District Court for the Eastern District of New York to a term of imprisonment of fourteen years upon his conviction of the violation of Title 18, United States Code, Section 1951, Interference with Commerce by Threats or Violence.
This paragraph does present the possibility of prejudice. But its inclusion is essential to the jury's understanding of the remainder of count four, which alleges that Persico sought by corrupt means to influence the section 2255 motion to vacate this sentence. If the paragraph were stricken, the jury would be hard put to infer a motive for the alleged obstruction of justice.
The motion to strike is denied.

VII
Persico argues that venue is not proper in this district because the government created venue here by procuring bogus writs of habeas corpus ad testificandum requiring his presence in this district. This court knows of no case which supports this contention. Indeed, in many undercover cases the government "creates" venue because a government agent participates in the illegal transaction, and venue is present in the district where the crime occurs. F.R. Cr.P. Rule 18.
Moreover, since those with whom Persico allegedly conspired or whom he allegedly aided and abetted performed numerous acts here, venue is proper even if Persico's acts are not considered. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912); United States v. Chestnut, 533 F.2d 40 (2d Cir.), cert. denied, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976).
The motion to dismiss for lack of venue is denied.

VIII
Persico contends that the government violated his right to a speedy trial and *103 to due process of law by intentionally delaying the indictment until two years after the alleged end of the conspiracy in November 1978.
Pre-indictment delay constitutes a violation of due process only if it caused "substantial prejudice" to a defendant's right to a fair trial and was "an intentional device to gain tactical advantage over the accused." United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). Persico has made no showing as to these elements.
The motion to dismiss for pre-indictment delay is denied.

IX
The court will defer consideration of the motions to dismiss for entrapment as a matter of law and for improper governmental conduct until at least the close of evidence at trial. All the other motions are denied. So ordered.