968 F.2d 22
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
William C. SCHLAPMAN, Defendant-Appellant.
 No. 91-1086.
 United States Court of Appeals, Tenth Circuit.
 July 2, 1992.
 
 Before McKAY and BRORBY, Circuit Judges, and VAN SICKLE,* District Judge.
 ORDER AND JUDGMENT**
 BRORBY, Circuit Judge.
 
 
 1
 William C. Schlapman appeals his conviction and sentence for one count of conspiracy under 18 U.S.C. § 371, and six counts of money laundering under 18 U.S.C. § 1956. Specifically, Mr. Schlapman asserts the district court erred in: (1) failing to dismiss the conspiracy count because it impermissibly alleged multiple conspiracies; (2) admitting a transcript containing a bankruptcy court's ruling concerning the existence of the alleged conspiracy into evidence; (3) failing to grant his motions for separate trial; and (4) imposing an improper sentence.
 
 
 2
 This case involves an extensive conspiracy among twelve defendants to defraud bankruptcy creditors. Mr. Schlapman was the accountant for the debtors, Gary and Marcee Levine. These three defendants were tried jointly. The facts surrounding this conspiracy are set out in detail in the companion case United States v. Levine, Nos. 91-1082, 91-1096 (10th Cir., July 2, 1992). Facts pertinent to Mr. Schlapman will be set out as necessary to our discussion.
 
 The Conspiracy Count in the Indictment
 
 3
 Mr. Schlapman joined in a motion asking the district court to dismiss the conspiracy count of the indictment as duplicitous. Alternatively, Mr. Schlapman moved the court for an election of offenses. The district court denied the motions finding 18 U.S.C. § 371 creates a single offense with specific alternative means to commit the offense, therefore the count is not duplicitous. The court reasoned that even if the count were duplicitous, dismissal was still not warranted because the duplicity would be harmless in this case. Finally, the district court concluded the policy goals underlying the rule against duplicity were not offended in this case.
 
 
 4
 On appeal, Mr. Schlapman argues that the indictment charging him with conspiracy which has as its objective the commission of five crimes, did not provide him with proper notice of the specific charges against him. Mr. Schlapman asks us to vacate his conviction and order count one of the indictment dismissed.
 
 
 5
 We review the trial court's ruling on dismissal of an indictment for abuse of discretion. United States v. Williams, 899 F.2d 898, 904 (10th Cir.1990), rev'd on other grounds, 112 S.Ct. 1735 (1992).
 
 
 6
 18 U.S.C. § 371 provides: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States," each shall be guilty of a crime.
 
 
 7
 Mr. Schlapman concedes a number of courts have held that the two conspiracy clauses of § 371 create only one crime which may be committed in one or two alternative ways. However, Mr. Schlapman argues the Tenth Circuit rejected this approach in United States v. Thompson, 814 F.2d 1472 (10th Cir.), cert. denied, 484 U.S. 830 (1987).
 
 
 8
 We disagree. The panel in Thompson faced a narrow issue concerning double jeopardy. In that case, the defendant pleaded guilty to the information which charged him with conspiracy to commit mail fraud and was later indicted for conspiring to defraud the government. The defendant moved to dismiss the indictment claiming he would face double jeopardy if he were tried under the indictment. We held the defendant would not face double jeopardy because each conspiracy offense included an element that the other did not. As no issue of duplicity was before the court, we conclude Thompson is inapposite to the present case.
 
 
 9
 We align with those courts that conclude § 371 provides for a single offense of conspiracy which specifies alternative means of committing the offense. See, e.g., United States v. Smith, 891 F.2d 703, 712 (9th Cir.1989), cert. denied, 111 S.Ct. 47 (1990); United States v. Berlin, 707 F.Supp. 832, 836 (E.D.Va.1989); United States v. Persico, 520 F.Supp. 96, 102 (E.D.N.Y.1981). It is the only logical interpretation of § 371. "It would be strange to infer that Congress intended to punish twice a conspiracy that violates both clauses. Where a single criminal statute prohibits alternative acts, courts should not infer the legislature's intent to impose multiple punishment." Smith, 891 F.2d at 712.
 
 
 10
 Our interpretation is consistent with Supreme Court precedent that allows an indictment to allege a single conspiracy whose objective is to commit several crimes. "The allegation is a single count of a conspiracy to commit several crimes is not duplicitous for 'The conspiracy is the crime, and that is one, however diverse its objects.' " Braverman v. United States, 317 U.S. 49, 54 (1942) (quoting Frohwerk v. United States, 249 U.S. 204, 210 (1919)). See also United States v. Daily, 921 F.2d 994, 1001 (10th Cir.1990), cert. denied, 112 S.Ct. 405 (1991); United States v. Sullivan, 919 F.2d 1403, 1435 n. 53 (10th Cir.1990).
 
 
 11
 Thus, we conclude the district court did not abuse its discretion in denying Mr. Schlapman's motion to dismiss count one of the indictment for duplicity.
 
 Bankruptcy Court Transcript
 
 12
 The district court admitted into evidence a transcript of a hearing conducted before the bankruptcy court. The hearing concerned whether Mrs. Levine should be required to turn over certain financial records. The transcript contained the testimony of Mrs. Levine and her attorney. The transcript also contained the bankruptcy judge's admonition to the Levines' attorneys and his conclusion that the law firm had either ignored its ethical obligations or had openly conspired with the Levines to secret funds and records from the creditors. Mr. Schlapman did not object to the introduction of this evidence.
 
 
 13
 Mr. Schlapman contends on appeal that although the transcript does not specifically name him, the government used Mr. Schlapman's close association with the law firm that was lambasted by the court against him. Mr. Schlapman contends the Levines furthermore used his close association with the law firm to bolster their claim that they were unwittingly duped by their lawyers and accountants. Ultimately, Mr. Schlapman contends he was prejudiced by the admission of the bankruptcy court's conclusions regarding the law firm as the jury could infer birds of a feather flock together.
 
 
 14
 When a party fails to object to the introduction of evidence, we review the trial court's decision to admit the contested evidence for plain error. United States v. Henning, 906 F.2d 1392, 1397 (10th Cir.1990), cert. denied, 111 S.Ct. 789 (1991). Plain error is so basic, prejudicial or lacking in its elements that justice cannot have been done. Id.
 
 
 15
 Mr. Schlapman objects to the admission of this evidence as improper hearsay and conclusions to the crimes for which he is being tried. Even assuming this to be true, we do not believe the admission of this evidence prejudiced Mr. Schlapman, much less rose to the level of plain error.
 
 
 16
 The transcript did not mention Mr. Schlapman or implicate him in the conspiracy. It implicated only the Levines and the law firm. In that regard, the evidence aided Mr. Schlapman in his defense theory. Mr. Schlapman asserted at trial that he was duped both by the law firm and by the Levines. In his opening statement, Mr. Schlapman's attorney said to the jury:
 
 
 17
 Bill Schlapman permitted the use of his trust account by these people. It was poor judgment, it was stupid, but he did so without any criminal intent.
 
 
 18
 Bill was betrayed by a trusted business lawyer, a lawyer who he respected, who is knowledgeable, who ran the show in bankruptcy court.
 
 
 19
 And more than that, he was manipulated by some very clever and cunning celebrities.
 
 
 20
 In closing, Mr. Schlapman's attorney returned to this defense theory stating:
 
 
 21
 [W]hat is this case all about?
 
 
 22
 And I suggest to you at the very least it's about furniture celebrities, it's about lawyers, it's about a liquidation sale, it's about bankruptcy court, it's about undisclosed assets, it's not about the accountant.
 
 
 23
 The bankruptcy judge's characterization of the law firm as unethical and his alignment of the Levines with that law firm tend to support Mr. Schlapman's defense. If anything, it advanced his defense theory. As applied to Mr. Schlapman, the transcript offered only exculpatory evidence. Exculpatory evidence cannot be prejudicial. Indeed, Mr. Schlapman has demonstrated no prejudice suffered as a result of the admission of this exhibit.
 
 
 24
 Our review of the record reveals no plain error from the district court's admission of the bankruptcy court transcript into evidence. Consequently, we affirm the district court's admission of the transcript.
 
 Motion for Separate Trial
 
 25
 Mr. Schlapman was tried jointly with coconspirators Gary and Marcee Levine. During the course of the proceedings, Mr. Schlapman made numerous motions for a separate trial. The district court finally denied Mr. Schlapman's motion at the end of the jury instruction conference.
 
 
 26
 On appeal, Mr. Schlapman argues the defenses presented by him and the Levines presented irreconcilable differences. He also contends he had to defend himself not only from the charges of the government but from the accusations of the Levines as well. Mr. Schlapman asserts he suffered extreme prejudice by being tried with the Levines.
 
 
 27
 Specifically, Mr. Schlapman asserts that the Levines opened a whole new area of testimony dealing with the preparation of their returns after the government completed its examination of one of Mr. Schlapman's employees. Mr. Schlapman also contests the Levines' cross-examination of their former accountant for the proposition they relied heavily on their accountant's advice. Another witness testified he failed to report a substantial amount of income and Mr. Schlapman had prepared his tax return.
 
 
 28
 We review a district court's decision to deny severance for abuse of discretion. United States v. Peveto, 881 F.2d 844, 857 (10th Cir.), cert. denied, 493 U.S. 943 (1989). We generally will not overturn a district court's decision absent a strong showing of prejudice. United States v. Cox, 934 F.2d 1114, 1119 (10th Cir.1991).
 
 
 29
 "[I]n deciding on a motion for severance, the district court has a duty to weigh the prejudice resulting from a joint trial of co-defendants against the expense and inconvenience of separate trials.... Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' from the evidence that was overwhelming or more damaging against the co-defendant than that against the moving party is sufficient to warrant severance."
 
 
 30
 United States v. Bailey, 952 F.2d 363, 365 (10th Cir.1991) (quoting United States v. Cardall, 885 F.2d 656, 667-68 (10th Cir.1989)). Severance is warranted where the level of antagonism between the defendants rises to a point where the defenses are mutually exclusive. Peveto, 881 F.2d at 857.
 
 
 31
 At the beginning of the trial, the district court expressed concern about the possibility of antagonistic defenses. However, after hearing all the evidence, the district court explicitly found the defenses were not antagonistic and therefore they were certainly not mutually exclusive. The court specifically found the evidence presented by the Levines was consistent with Mr. Schlapman's theory of defense.
 
 
 32
 The record supports the district court's factual finding. The record reveals the Levines presented evidence tending to show they relied on their lawyers and accountant, Mr. Schlapman. Mr. Schlapman presented evidence that he relied on the Levines to provide him with accurate and complete information and therefore did his job to the best of his ability based on the information available to him.
 
 
 33
 Both parties presented evidence that the law firm ran the show. Mr. Levine testified that his attorney told him to put funds in the attorneys' secret account to pay the creditors. In closing, the Levines stated that the real criminals in this case were the attorneys. Similarly, Mr. Schlapman attacked the attorneys in his closing argument as well.
 
 
 34
 In addition, the court gave a jury instruction regarding reliance on the advise of counsel. No similar instruction was given on reliance on an accountant. Additionally, the court instructed that Mr. Schlapman could not be convicted of various charges if he acted in good faith on information which his clients provided. Finally, the court instructed the jury to consider the evidence against the defendants individually.
 
 
 35
 Based on the instructions and evidence presented, the jury could find the law firm provided the Levines with false information which they in turn gave to Mr. Schlapman. Both defenses could be reconciled. Consequently, the defenses were not mutually exclusive.
 
 
 36
 We hold that Mr. Schlapman has failed to make a strong showing of prejudice resulting from his joint trial with the Levines. Therefore, we hold the district court did not abuse its discretion by denying Mr. Schlapman's motion for severance.
 
 Sentencing[1]
 
 37
 First, Mr. Schlapman asserts the district court erred in its determination of the adjustment for the base offense level for losses caused by fraud. Our decision in Levine is dispositive. The district court's determination is affirmed.
 
 
 38
 Second, Mr. Schlapman argues the court erred by failing to accord him a downward adjustment for acceptance of responsibility as accorded by § 3E1.1 of the Sentencing Guidelines. As support for this claim, Mr. Schlapman contends he is the only defendant who has provided substantial restitution. Furthermore, Mr. Schlapman contends that his remarks at the sentencing hearing demonstrate his acceptance of responsibility. He said, "I don't have anybody to blame but myself and I'm not mad at anybody, and I don't blame anybody. I was wrong in letting the Levines use my trust account."
 
 
 39
 The district court concluded that Mr. Schlapman had not satisfied his burden of proof demonstrating his entitlement to a two point downward adjustment for acceptance of responsibility.
 
 
 40
 The district court's conclusion that Mr. Schlapman had not accepted responsibility is supported by the record in at least four respects. First, Mr. Schlapman submitted a version of the offense prior to sentencing in which he stated he "did not intentionally defraud any one of anything." Second, during sentencing, Mr. Schlapman continued to deny he acted with criminal intent. Third, Mr. Schlapman made several false statements to the government during the course of its investigation. Fourth, although Mr. Schlapman negotiated a settlement with the bankruptcy trustee in a related civil proceeding, the settlement agreement also explicitly denies any liability by Mr. Schlapman.
 
 
 41
 Mr. Schlapman did not show any remorse until the sentencing hearing. This showing is untimely for purposes of a downward adjustment for acceptance of responsibility. See United States v. Dennison, 937 F.2d 559, 566-67 (10th Cir.1991), cert. denied, 112 S.Ct. 886 (1992).
 
 
 42
 Consequently, we affirm the district court's decision to deny Mr. Schlapman a two-point downward adjustment for acceptance of responsibility.
 
 
 
 *
 The Honorable Bruce M. Van Sickle, Senior District Judge for the District of North Dakota, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Mr. Schlapman first argues that the ambiguous indictment renders it unclear whether the Sentencing Guidelines apply to his sentence. Mr. Schlapman is incorrect. Mr. Schlapman was convicted of one conspiracy with multiple objectives. The entire conspiracy lasted until the defendants were charged in July 1989. Thus the Guidelines clearly apply. See United States v. Williams, 897 F.2d 1034, 1040 (10th Cir.1990), cert. denied, 111 S.Ct. 2064 (1991). (Although defendant's last transaction in conspiracy occurred before effective date of Sentencing Guidelines, where the entire conspiracy continued until after the effective date, it was proper for the court to sentence defendant under the Guidelines.)