**UNITED STATES of America,**
**Appellee,**

v.

**Victor EUPHEMIA, Appellant.**
**No. 131, Docket 25290.**

United States Court of Appeals
Second Circuit.

Argued Nov. 7, 1958.

Decided Dec. 9, 1958.

Bella V. Dodd, New York City (C. Joseph Hallinan, Jr., New York City, of counsel), for appellant.

Arthur H. Christy, U. S. Atty., S. D. N. Y., New York City (Herbert F. Roth, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before CLARK, Chief Judge, WATERMAN, Circuit Judge, and GALSTON, District Judge.

WATERMAN, Circuit Judge.

After a trial without jury defendant was convicted of violating 21 U.S.C.A. §§ 173, 174, of violating 26 U.S.C. §§ 4701, 4703, 4704(a), 4771(a), 7237(a), and of conspiring to violate 21 U.S.C.A. §§ 173, 174. On this appeal he makes only the one contention that the Government's evidence was insufficient to support his conviction, a contention with which we agree.

In New York City on a number of occasions beginning in April 1956, Agent Moyhaham of the Bureau of Narcotics met with Mario Perna, Jack Cohen, Romeo Paglarelli, Ralph Musselman and Joseph Perna. The purpose of those meetings was to discuss and arrange for the sale of narcotics to Moyhaham, sales that were subsequently effected. There is no evidence that defendant was ever a member of this group. At a meeting between the two of them on November 7, 1957 when Moyhaham effected a purchase Mario Perna told Moyhaham that he had a partner but he did not identify him. The Government sought to prove that Euphemia was this "partner." On November 12 Perna and Moyhaham met with each other again and agreed to meet the next evening on the corner of 50th Street and Second Avenue to effect yet another narcotics delivery. At approximately 7:30 P.M. on November 13, 1957 Federal Agents Coyne and Costa observed defendant and Mario Perna meet at 120th Street and Second Avenue and walk to a nearby public school where they stood at the top of a short flight of stairs and conversed for about twenty minutes. During this conversation Perna and defendant kept turning their heads to look up and down the street. Shortly before 8:00 P.M. they entered a parked dump truck and depart-

ed, agents Coyne and Costa following. At 52nd Street and Third Avenue the truck stopped for a red light and defendant left it and walked away. Mario Perna drove to 50th Street and parked the truck between Second and Third Avenues. He then walked to the corner and met Moyhaham. The two men seated themselves in the truck and Perna gave Moyhaham a large paper bag containing narcotics which had been on the floor near the driver's seat. They then went into a nearby restaurant where Perna told Moyhaham that if any agents appeared and they had to resist arrest he had a partner nearby who would assist them. Shortly thereafter Perna was arrested in the restaurant by agent Coyne. Before he entered the restaurant Coyne had observed Euphemia looking toward Perna and Moyhaham from the corner of 51st Street and Second Avenue. After Perna had been arrested Coyne left the restaurant and drove the dump truck to the corner of 50th Street and Second Avenue. Defendant was standing nearby. The agent parked the truck, defendant started to walk away, and Coyne walked after him and overtook him within a short distance. After the agent identified himself defendant stated that he was in the neighborhood to meet his girl friend and that he had traveled there by bus. Coyne arrested him. Subsequent to his arrest defendant denied that he knew Mario Perna or that he had driven anywhere with him that evening in a truck.

Defendant did not take the stand. His only witness was a Rosalie Orso who testified that she had a date to meet him at 9:00 P.M. on November 13, 1957 at 52nd Street and Second Avenue. She stated that she regularly dated the defendant and that she had met him at this location before.

We cannot affirm the conviction on this record. Defendant's connection with Perna in the commission of the substantive crimes and his membership in the alleged conspiracy must be inferred from his activities on November 13. Those activities do not support the necessary inferences to sustain the conviction. There is no evidence tending to show that defendant and Perna were seeking to avoid detection when they were together that night. Indeed, their position in the open on the steps of the school building would appear to negative such an intent. In this light the turning of heads to look up and down the street loses much of its sinister potential. The federal agents admitted that at no time did they see defendant in possession of the paper bag. We cannot assume that defendant must have known of its presence on the floor when he was riding in the truck for Moyhaham testified that when he was sitting in the truck he did not see the bag until Perna reached down and picked it up. Moreover, it is not at all clear that defendant was betraying a consciousness of guilt of the crimes here charged when he was interrogated. Defendant had been in trouble with the law and was at that time on probation. Thus it is not inconsistent with his innocence that he walked away when a stranger approached in the dump truck, or that he at first denied knowing Perna when questioned by the officers.

The Government was required to show more than that Euphemia was acquainted with Perna or that the two men were friends. Euphemia's explanations and Rosalie Orso's story may be unworthy of belief, but it is our opinion that the Government failed to produce any testimony linking Euphemia's actions on the night of November 13 to the criminal activities of Mario Perna on that evening. Proof that the defendant knew Perna and rode seventy blocks in the same vehicle with him does not appear to be enough here to prove that the defendant was Perna's "partner" in the illegal sale of narcotics.

The judgment of conviction is reversed and the indictment ordered dismissed.