**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**Felipe RODRIGUEZ, Defendant-Appellee.**

**No. 275, Docket 82–1211.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 12, 1982.

Decided Feb. 24, 1983.

William B. Pollard, III, Asst. U.S. Atty., for the Southern District of New York, New York City (John S. Martin, Jr., U.S. Atty., for the Southern District of New York; Roanne L. Mann, Asst. U.S. Atty., New York City, of counsel), for plaintiff-appellant.

Martin J. Proscia, Kew Gardens, N.Y., for defendant-appellee.

Before MESKILL, PIERCE and FAIRCHILD,* Circuit Judges.

PIERCE, Circuit Judge:

During the early evening of August 20, 1981, an undercover agent of the Federal Drug Enforcement Administration (DEA), Lawrence Acevedo, drove with a confidential informant to the area of Kingsbridge Road and Jerome Avenue in the Bronx, New York City. On Jerome Avenue, Agent Acevedo stopped the automobile (the Acevedo car) and the confidential informant left the vehicle and met with Victor Rodriguez,[1] as previously arranged. Victor then joined Agent Acevedo and the informant in the car and began negotiating a $10,000 sale of cocaine to Acevedo. Three DEA surveillance agents—Hudson, Rice, and Jones— were also in the locale of the prearranged meeting of Victor, the informant, and Agent Acevedo, and were parked nearby.

While the three men were negotiating the drug deal in the Acevedo car, Agent Hudson, who, with his partner, Agent Rice, was parked about seven car lengths to the south of that car, observed defendant-appellee, Felipe Rodriguez, walk past and look into Hudson's and Rice's vehicle (the Hudson car), and then walk past and look into the Acevedo car. As Victor Rodriguez was counting the $10,000, Felipe Rodriguez peered "very intently and very determinedly in the [Acevedo] car." Tr. 36.[2] Agent Acevedo asked Victor if he knew who the person was, and Victor nodded affirmatively. Acevedo followed Felipe in his rear view mirror for about four car lengths south, and then turned his attention back to the negotiations.

After Victor finished counting the money, he and the informant left the Acevedo car and walked north. Agent Acevedo testified that Victor stated "he was going to his source and would be back shortly." Tr. 37. According to the testimony of Agents Acevedo, Rice and Hudson, during the approximately 20 minutes Victor and the informant were gone, Felipe walked up and down the same block—walking by the Acevedo car some three to four times, looking into the car each time, but not as intently as the first time when his brother, Victor, was counting the money. According to Agent Hudson, Felipe Rodriguez appeared to be engaged in countersurveillance. Victor then returned to the Acevedo car with the informant and one "Jose." Jose stated he did not wish to do business at 196th Street and Jerome Avenue because it was a busy location, police vehicles might pass by, and they might attract attention. Jose expressed his wish to do business further uptown, north of 196th Street, and invited Acevedo to his apartment. When Acevedo refused, Jose and Victor left and walked north, apparently to discuss what to do. Agent Rice observed Jose and Victor proceed north on Jerome Avenue, out of his sight.[3] Agent Jones, unlike his agent-colleagues, testified before the jury that after Victor had counted the money, his brother Felipe joined him and left the area with him.[4]

---

* The Honorable Thomas E. Fairchild of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Both appellee and his brother Victor were indicted on two counts: conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; and distribution and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2. Also named in each count of the indictment was Samuel Fernandez.

2. References are to the trial transcript, unless otherwise indicated. On cross-examination, Agent Acevedo described Felipe Rodriguez' expression not as "surprised" but as "curious." Tr. 76.

3. At the time, Agent Hudson, Rice's partner, was in the car, which was now parked behind a van blocking their view. Tr. 103.

4. The district judge found Jones' testimony to this effect "unbelievable as a matter of law," since it was "inconsistent with the testimony of every other witness." Tr. 5 (Rule 29 hearing, held on May 6, 1982, before Judge Knapp). We reject this finding and conclude that a reasonable juror could have found Jones' testimony credible. *See* discussion in text *infra*.

Victor then returned and entered the Acevedo car. He asked Acevedo to drive several blocks north to Morris and Jerome Avenues to complete the transaction. Acevedo did so, accompanied by Victor and the informant. Having arrived at this second location, Acevedo parked by a fire hydrant. Acevedo remained in the car while Victor left the car and entered an apartment building across the street. A few minutes later, five individuals were observed by Agent Acevedo leaving the building together: Felipe Rodriguez, Victor Rodriguez, Sammy Fernandez, Jose, and a person later identified as "Danny."[5] Two agents testified that Felipe conversed with the others at this second location. Agent Rice observed Felipe in what appeared to be conversation with Victor and Sammy after leaving the building; Jones testified that he saw Felipe conversing with Victor, Sammy and Jose on the corner of Morris and Jerome, about 50 yards from the Acevedo car minutes prior to the arrest.

Having left the building, Felipe, Victor and Sammy approached the Acevedo car, while Jose and Danny remained standing on the corner. Sammy and Victor entered the car. Agents Acevedo, Jones and Rice observed the actions of Felipe Rodriguez at this point, although describing his movements somewhat differently. Agent Acevedo, who was in the driver's seat of the car, testified that he saw Felipe walk to the rear of the car when Sammy and Victor got in, and stand outside it. Jones testified that he observed Felipe standing on the corner where the vehicle was parked. Agent Rice stated that he saw Felipe step back from the Acevedo car "possibly 20 or 30 feet sort of up a hill, and he again was looking around in the vicinity." Tr. 138. Then, according to Acevedo, Sammy gave Acevedo a brown paper bag containing two plas-

tic bags of white powder. At that time, Acevedo gave a prearranged arrest signal, and Felipe Rodriguez and Jose "took off like a bolt of lightening [sic]." Tr. 157. (Agent Jones). Agents Jones and Joura arrested Felipe, whom they found "walking up [an adjacent] street in a hurried fashion." Tr. 157–58.

The next day, Felipe Rodriguez was questioned at the United States Attorney's office in the Southern District of New York. When asked what he was doing in the vicinity of 196th and Jerome the previous evening, Felipe made a statement "to the effect that he was out jogging, that he had jogged passed the vehicle, said hello to his brother, who was in the undercover [Acevedo] vehicle, and jogged past without stopping, and that he did not remain near that vehicle."[6] Tr. 139–40 (Agent Rice).

On August 31, 1981, a grand jury in the Southern District of New York indicted appellee Felipe Rodriguez, his brother Victor Rodriguez, and Samuel Fernandez, each on two counts of violating federal drug laws.[7] Felipe and Victor Rodriguez were tried before Judge Knapp and a jury, commencing on November 30, 1981.[8] The jury returned a guilty verdict against Victor on both counts on December 2, 1981, and against Felipe the following day. Felipe Rodriguez moved for judgment of acquittal on the ground of insufficient evidence, pursuant to Fed.R.Crim.P. 29(c). The district court granted the motion by oral order entered on May 6, 1982.

In ruling on the motion for acquittal, the district judge pointed out that "the crucial thing here" was that Felipe and Victor were brothers. Tr. 2 (Rule 29 hearing). The judge stated, "Nothing happened here that isn't equally explainable by the fact that they are brothers." *Id.* In addition,

---

**5.** There was no dispute as to the identity of those in the group that left the building at the Morris and Jerome location.

**6.** Agent Hudson took a statement from Victor that same day in which Victor implicated Jose, Sammy, and Danny, but not Felipe. Tr. 127. Sammy Fernandez' statement also made no mention of Felipe. The jury was told that nei-

ther statement mentioned Felipe Rodriguez. Tr. 155.

**7.** *See* note 1 *supra.*

**8.** At the time briefs were submitted, this Court was informed by appellant's counsel that co-defendant Samuel Fernandez remained a fugitive.

the judge concluded that "[t]he testimony of [Agent] Jones that [Felipe] left with his brother [at the first location] is unbelievable as a matter of law." Tr. 5. This appeal followed.

On appeal, the government objects, *inter alia*, to these two principal bases for granting the Rule 29 motion—the "brother" theory and rejection by the judge of Agent Jones' testimony. By granting the motion, it is argued, the district judge erred by "substitut[ing] [his] own determination of the credibility of witnesses, the weight of the evidence, and the reasonable inferences for that of the jury." *United States v. Artuso,* 618 F.2d 192, 195 (2d Cir.), *cert. denied,* 449 U.S. 861, 101 S.Ct. 226, 66 L.Ed.2d 102 (1980). We agree.

The standard which a trial judge must apply to a motion for acquittal in this Circuit is set forth in *United States v. Taylor,* 464 F.2d 240, 243 (2d Cir.1972):

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, *if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter.* (citation omitted) (emphasis added)

*See also Jackson v. Virginia,* 443 U.S. 307, 318–19 n. 11, 99 S.Ct. 2781, 2788 n. 11, 61 L.Ed.2d 560 (1979); *United States v. Lieberman,* 637 F.2d 95, 104–05 (2d Cir.1980); *United States v. Artuso, supra,* 618 F.2d at 195. In addition, "all reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense." *United States v. Artuso, supra,* 618 F.2d at 195 (citation omitted).

In this case, evidence of Felipe Rodriguez' specific actions occurring during the course of events described with particularity by the government's witnesses provided a sufficient basis upon which a jury could—and did—conclude that he was acting as a "lookout" during the drug transaction. We note, for example, that Felipe was present at a prearranged time and place for the negotiation; spent 30–45 minutes walking up and down the block past the surveillance and undercover vehicles and peering into both at the first location; reappeared at a second location about four blocks north shortly thereafter with four other men, one of whom—Victor Rodriguez—was found by the jury to have been involved in the cocaine transaction; conversed with two or three of the others just prior to the sale; stood at the rear of the car looking around while the sale was taking place; fled immediately when the arrest occurred; made exculpatory statements to the Assistant United States Attorney on the day following the incident which the jury apparently found to be false.

Appellee, however, relying principally on *United States v. Euphemia,* 261 F.2d 441 (2d Cir.1958), contends that the district judge properly concluded that the evidence was insufficient to support the conviction. In *Euphemia,* defendant was convicted of conspiracy and narcotics offenses. He appealed the conviction, claiming there was insufficient evidence to link him to the drug conspiracy. This Court agreed and reversed Euphemia's conviction, stating:

> The Government was required to show more than that Euphemia was acquainted with Perna [other defendant] or that the two men were friends.... Proof that the defendant knew Perna and rode seventy blocks in the same vehicle with him [prior to the illegal sale] does not appear to be enough here to prove that the defendant was Perna's "partner" in the illegal sale of narcotics.

*Id.* at 442. Moreover, there was testimony by Euphemia's girlfriend to the effect that she had a prearranged rendezvous with him at the location in question. The Court properly did not pass on the credibility of the girlfriend's testimony, but concluded "that the Government failed to produce any testimony linking Euphemia's actions on the night of November 13 to the criminal activities of Mario Perna on that evening." *Id.* This is quite unlike the instant case where the government presented the testimony of four agents describing in detail Felipe Rodriguez' participation in a sequence of events which the jury found were related to the drug transaction. The jury had a sufficient basis on which it could reasonably choose to draw the inference that Felipe's actions were not simply those of a curious brother. Even if Felipe's presence at the *first* location were to be explained by the mere fact that he lived nearby and happened upon his brother while he was counting a large sum of money in the Acevedo car, his presence and activity at the *second* location cannot be disposed of so facilely. Such activity is susceptible to an interpretation of guilt or innocence, and the jury was free to draw either conclusion. *See Holland v. United States,* 348 U.S. 121, 139–40, 75 S.Ct. 127, 139, 99 L.Ed. 150 (1954); *United States v. Rucker,* 586 F.2d 899, 904 (2d Cir.1978); *United States v. Turbide,* 558 F.2d 1053, 1063–64 (2d Cir.), *cert. denied,* 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977); *United States v. Taylor, supra,* 464 F.2d at 244. In short, on the evidence presented, a jury could have concluded beyond a reasonable doubt that Felipe went to the second location for the purpose of assisting in the drug transaction as a lookout.

In addition, the appellee draws a distinction, as did the district court, between the instant case and another comparable "brother" case, *United States v. Pui Kan Lam,* 483 F.2d 1202 (2d Cir.1973), *cert. denied,* 415 U.S. 984, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974). In that case, Leung Lam had been convicted, along with his younger brother Pui Kan Lam and two others, on one count of possession with intent to distribute heroin. *Id.* at 1203. Defendants were alleged to have been involved in obtaining heroin by gaining access to an apartment in Queens, New York City. There was evidence adduced at trial from which a jury could infer that Leung Lam had accompanied the others to Queens on more than one occasion prior to the date in question. In addition, on the date of his arrest, he was with the others in a Queens restaurant; he accompanied the others on the way to the apartment building, then crossed the street, continued to proceed in the same direction, stopping often and looking around as he walked toward the building; at the time of arrest, he was found on his way to the car of a co-defendant.

Leung Lam challenged the sufficiency of the evidence supporting his conviction. This Court rejected defendant's claim and affirmed the conviction. The Court concluded that a jury could find "that Leung Lam acted as a lookout for the group and did not innocently go along with the others 'just for the ride.'" *Id.* at 1208. That the evidence was circumstantial and "less than overwhelming," did not preclude such a finding by the jury. *Id.* The Court noted:

> Leung Lam followed the appellants toward the apartment on the opposite side of the street. The testimony of the surveilling agents disputed his testimony that he entered a store to shop for yarn. According to the agents he never lost sight of the others until they entered the apartment building. He admitted on cross-examination that he made purchases alone in non-Chinese stores "many times" and that he could read Arabic price tags on merchandise. Given that admission, and the agent's testimony, the jury could rationally discredit entirely Leung Lam's story that at the time of arrest he was wandering on the street seeking an interpreter to help him negotiate the purchase of yarn. The jury could thus interpret appellant's conduct as indicating "concer[n] about possible police surveillance or interference from innocent passers-by," . . . and not as the conduct of an innocent caught in a police dragnet.

*Id.* (citation and footnote omitted). Appellee, as did the district judge, distinguishes *Pui Kan Lam* from the instant case in two principal respects. First, in *Pui Kan Lam,* appellee contends, defendant Leung Lam gave false testimony on the stand. Br. for Appellee at 24–25; Tr. 10 (Rule 29 hearing). Appellee further distinguishes the case by pointing out that in *Pui Kan Lam* Leung Lam took two prior trips with his brother on different days to a neighborhood in Queens where he did not reside—the neighborhood where the illegal activity took place. While we decline appellant's invitation to analogize Felipe Rodriguez' alleged false exculpatory statements to the Assistant United States Attorney to Leung Lam's alleged perjurious statements at trial, the presence of such testimony in *Pui Kan Lam,* in our view, is not dispositive of the instant case. Appellee's second point is also unpersuasive. Here, there was considerable testimony by four agents, apparently found by the jury to be credible, which would permit an inference to be reasonably drawn that Felipe's presence at two locations, four blocks apart, at which successive steps in the illegal transaction occurred, was not fortuitous. We find this evidence is not significantly less substantial than the evidence of Leung Lam's two trips with his brother to Queens, coupled with his yarn-shopping explanation.

Finally, we do not agree that Agent Jones' testimony that Felipe joined Victor and left the first location with him after the counting of the money is "unbelievable as a matter of law." Tr. 5 (Rule 29 hearing). Although Agent Jones was the only witness who so testified, it is quite plausible that the other agents were not in a position to see the two brothers leave together, if indeed that is what occurred. For example, Agent Hudson testified that at the time in question "a van ... was blocking our view ... [and he] did not personally see anything else." Tr. 103. Agent Rice testified that he saw Victor and Jose "proceed north on Jerome Avenue out of [his] sight." Tr. 136. In addition, the jury might well have found that Agent Acevedo was distracted by activity in and near his vehicle and did not observe all of Felipe's activities. From this perspective, we do not find Agent Jones' testimony "so incredible that no reasonable juror could believe him." *See United States v. Shulman,* 624 F.2d 384, 388 (2d Cir.1980). In our view, it was within the province of the jury to determine whether, given the totality of the testimony, Agent Jones' version was correct.

We conclude that the jury had before it sufficient evidence to warrant an inference that Felipe Rodriguez participated as a lookout in the transaction of August 20, 1981. We therefore reverse the granting of appellee's motion for judgment of acquittal by the district judge and reinstate the jury verdict.