**UNITED STATES of America,**

v.

**YONKERS CONTRACTING COMPANY, INC., et al., Defendants.**

**No. 87 Crim. 560 (WCC).**

United States District Court,
S.D. New York.

Feb. 28, 1989.

---

3. Because the Court concludes that the complaint should be dismissed without prejudice, plaintiff's motion for discovery pursuant to Fed. R.Civ.P. 56(f) is denied.

Ralph T. Giordano, Atty., Dept. of Justice, Chief, Antitrust Div., New York City, for U.S.; Rebecca Meiklejohn, Edward Friedman, Geoffrey Swaebe, Jr., Attys., Dept. of Justice, of counsel.

Loeb and Loeb, New York City, for Nigro Bros., Inc., August Nigro and Peter Nigro; Harry First, of counsel.

Berman, Paley, Goldstein & Berman, New York City, for Yonkers Contracting Co., Inc.; David R. Paley, of counsel.

Marchi, Jaffe, Steinberg, Crystal, Katz & Burke, New York City, for County Asphalt, Inc.; David Jaffe, of counsel.

O'Connor & Hannan, Washington, D.C., for County Asphalt, Inc.; David Melincoff, of counsel.

Kelley, Drye & Warren, New York City, for Peckham Materials Corp.; Robert E. Crotty, of counsel.

Ross & Hardies, Washington, D.C., for Frank D. Cooney, Jr.; Myles J. Ambrose, of counsel.

Dunnells, Duvall, Bennett & Porter, Washington, D.C., for William A. Bassett; Robert S. Bennett, of counsel.

Santangelo, Santangelo & Cohen, New York City, for Area Paving Corp. and Matthew N. Mauriello; Susan G. Kellman and George Santangelo, of counsel.

Scoppetta & Seiff, New York City, for Putnam Asphalt Corp.; Eric A. Seiff, of counsel.

Baden, Kramer, Huffman & Brodsky, P.C., New York City, for Edward J. Petrillo, Jr.; William M. Brodsky, of counsel.

## OPINION AND ORDER

### BACKGROUND

WILLIAM C. CONNER, District Judge:

### BACKGROUND

Defendants, six corporations and six individual officers,[1] were charged with violating Section 1 of the Sherman Antitrust Act by engaging in a single conspiracy "to submit collusive, noncompetitive and rigged bids, or to refrain from bidding ... and to allocate among themselves certain geographic areas and contracts for the sale or sale and application of asphalt to the State of New York, Westchester County, and municipalities therein." Indictment at ¶ 12.

This action is presently before the Court on defendants' motion for judgment of acquittal, pursuant to Rule 29, Fed.R.Crim.P. Defendants originally made their motion at the close of the evidence, at which time the Court reserved decision pending the outcome of the jury's deliberations. When the jury was discharged after failing to reach a verdict, defendants renewed their motion. Defendants contend that a judgment of acquittal should be entered because the evidence adduced at trial, if believed, shows the existence of two separate conspiracies, and not the single conspiracy charged by the government. For the reasons stated below, defendants' motion is denied.

### DISCUSSION

In considering a motion for a judgment of acquittal in a conspiracy case, the Court "must determine whether upon the evidence ... a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984) (quoting *Curley v. United States*, 160 F.2d 229, 232–33 (D.C.Cir.), *cert. denied*, 331 U.S. 837, 67 S.Ct. 1512, 91 L.Ed. 1850 (1947)); *accord United States v.*

---

1. One corporate defendant, Westchester Colprovia Corp., pleaded nolo contendere prior to trial. One individual defendant, Anthony Cahill, was acquitted.

*Lieberman,* 637 F.2d 95, 104–05 (2d Cir. 1980); *see also Jackson v. Virginia,* 443 U.S. 307, 318–19 n. 11, 99 S.Ct. 2781, 2788–89 n. 11, 61 L.Ed.2d 560 (1979). It is well-settled that "all reasonable inferences are to be resolved in favor of the prosecution and the trial court is required to view the evidence in the light most favorable to the Government with respect to each element of the offense." *Mariani,* 725 F.2d at 865 (quoting *United States v. Artuso,* 618 F.2d 192, 195 (2d Cir.), *cert. denied,* 449 U.S. 861, 101 S.Ct. 164, 66 L.Ed.2d 77 (1980)); *accord United States v. Rodriguez,* 702 F.2d 38, 41 (2d Cir.1983). The Court must guard against "judicial usurpation of the jury function." *Mariani,* 725 F.2d at 865.

Defendants maintain that asphalt supply and resurfacing represent two distinct markets which cannot be linked to one conspiracy. The government counters that the facts establish a single conspiracy because defendants' common objective was to control prices in Westchester's paving industry, and they were all competitors in that industry. Asphalt supply and resurfacing cannot be segregated, the government argues, because their pricing is interdependent, and the conspiracy's success rested on defendants' ability to collude with respect to both.

In support of their claim that asphalt supply and resurfacing are separate markets, defendants argue that two defendants, Nigro Bros., Inc. ("Nigro Bros.") and Area Paving Corp. ("Area Paving"), competed only in the resurfacing market and therefore could not have conspired to fix the price of asphalt. Defendants assert that the two corporations and their officers were prejudiced by the admission of evidence about a meeting to discuss asphalt prices they did not attend. "In this way did the asphalt conspiracy strengthen the case against those defendants competing only in the resurfacing market." Defendants' Brief at 22–23.

The fact that Nigro Bros. and Area Paving did not attend certain meetings or themselves submit asphalt-supply bids to the county or state is not inconsistent with their alleged participation in a single conspiracy to allocate geographic areas and contracts for the sale and application of asphalt in Westchester. "There is, of course, no requirement that each coconspirator participate in every phase of an evolving conspiracy, as long as each was aware that the conspiracy did not begin and end with his own activities." *United States v. Heinemann,* 801 F.2d 86, 92 n. 2 (2d Cir. 1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1308, 94 L.Ed.2d 163 (1987); *cf. United States v. Friedman,* 854 F.2d 535, 562 (2d Cir.1988) ("there is no requirement that each member of a conspiracy conspire directly with every other member of the conspiracy").

By emphasizing that Nigro Bros. and Area Paving did not supply asphalt, defendants attempt to convince the Court that the paving industry contains discrete markets with different competitors. In turn, defendants seek to demonstrate that in antitrust cases, separate markets require separate conspiracy charges. *See United States v. Korfant,* 771 F.2d 660 (2d Cir. 1985); *United States v. Sargent Electric Co.,* 785 F.2d 1123 (3d Cir.1986), *cert. denied,* 479 U.S. 819, 107 S.Ct. 82, 93 L.Ed.2d 36 (1986).

The Court does not dispute defendants' contention that market analysis is a useful tool for analyzing antitrust conspiracy cases. Rather, the Court finds that, resolving reasonable inferences in favor of the prosecution and viewing the evidence in the light most favorable to the government, there is ample evidence from which a jury could reasonably conclude that asphalt supply and resurfacing were sufficiently interconnected that the alleged actions of defendants comprised a single conspiracy.

Defendants themselves concede that the government's evidence showed that bids on contracts for the sale of asphalt were "sometimes discussed by the same employees involved in submitting resurfacing bids to the municipalities," and that "[s]ome of these bids were submitted at the same time that the resurfacing bids were." Defendants' Brief at 6. Furthermore, defendants acknowledge that four of the six corporate defendants engage in both as-

ngalthe xt.

phalt supply and resurfacing. A fifth, Nigro Bros., did not have a state-approved manufacturing plant and therefore could not bid to supply the state or county with asphalt, but was nevertheless able to submit municipal asphalt-supply bids. Government's Brief at 5. The government suggests that Nigro Bros.' municipal bids implicated it in the state and county bid-rigging; if Nigro Bros.' municipal bids were competitive, the non-competitive nature of the other companies' state and county bids might have been exposed. *Id.*

Defendants also admit that Nigro Bros. and Area Paving were placed on a "producers' price list" which allowed them to obtain asphalt at a discount. Defendants' Reply Brief at 3–4. The government points out that the list "did not include any companies other than the defendant corporations or their affiliates." Government's Brief at 8. Finally, defendants admit that the cost of asphalt, on average, constitutes "about half the costs involved in a resurfacing contract," and can constitute up to 70% of a resurfacing bid. Defendants' Brief at 2–3. The government adds that "[a]t least eleven [municipalities] took bids for asphalt F.O.B., delivered and laid-in-place in a package." Government's Brief at 3. The alleged conspiracy, the government says, occurred within the confines of Westchester County "from the early 1970's through 1984 or 1985." *Id.* at 6–7.

These facts, the government argues, show not only that the alleged conspirators operated as a discrete group with a common objective within a limited geographic scope and time frame, but, most important for the disposition of the motion at issue, that the conspiracy's success rested upon defendants' ability to calibrate the resurfacing bids to the price of asphalt. For example, if the price of asphalt were too low in relation to the price of resurfacing, then a municipality might suspect collusion, or, at the very least, have an economic incentive to buy only the asphalt and do the

resurfacing work with its own forces, and defendants' scheme would be imperiled. Certainly a jury would be reasonable in finding that asphalt supply and resurfacing were interdependent components of the paving industry.

The concept of interdependence distinguishes the current case from those on which defendants rely. For example, in *United States v. Korfant*, 771 F.2d 660 (2d Cir.1985), where the Court of Appeals found separate conspiracies, there was no claim that prices in supermarkets in Cleveland were in any way related to prices in Connecticut and Massachusetts, nor was there any demonstration that consumers in one market were aware of prices in the other. Moreover, in *Korfant*, there was only one actor, the supermarket, and therefore no agreement among competitors. The Court decided that success in New England would have been independent of a corresponding success or failure in Ohio, because the competitors and consumers represented "two distinct sets." *Id.* at 663.

In *United States v. Sargent Electric Co.*, 785 F.2d 1123 (3d Cir.1986), the Court found multiple conspiracies among electrical contractors accused of rigging bids for electrical work at several companies. However, the facts in the case suggest that the pricing of an electrical project and its ultimate success did not depend on the circumstances of any other project.

In the current case, unlike *Korfant* and *Sargent*, the government has made a reasonable showing that the price of asphalt bears directly on the price of resurfacing, and that defendants' alleged conspiracy to control the paving industry would be jeopardized if either asphalt supply or resurfacing were priced competitively.[2]

## CONCLUSION

As defendants note in their brief, whether there is a single conspiracy, or multiple conspiracies, is a factual question reserved

---

**2.** Defendants have not cited a case granting a judgment of acquittal based on the analysis applied in *Korfant* and *Sargent*. Indeed, neither of those cases is clearly on point, because both of them are double jeopardy claims, where the underlying issue is whether the government is trying to bring the same case twice. A motion made under Rule 29 raises the separate question of whether the evidence presented by the prosecution is sufficient to sustain a conviction.

**300**

for the jury. The Court carefully instructed the jury that it would have to acquit all the defendants if it found more than the single conspiracy charged by the government in the indictment. Viewing the evidence in the light most favorable to the government, and drawing reasonable inferences in favor of the prosecution, as it is required to, the Court finds that a reasonable jury could return a guilty verdict on the single conspiracy charge. Defendants' motion for a judgment of acquittal is accordingly denied.

SO ORDERED.